# CHARLESTON.

STATE *v.* WEST VIRGINIA PULP & PAPER COMPANY

(No. 6450)

Submitted February 4, 1930. Decided February 11, 1930.

554

*Talbott & Hoover*, for appellant.

*H. B. Lee*, Attorney General, and *Samuel T. Spears* and *S. L. Reger*, for appellees.

HATCHER, JUDGE:

This is a suit brought by the State to have a boundary of 1,043 acres in Randolph county declared forfeited and unappropriated. The circuit court found that of this boundary the State was vested with the title to 575.43 acres. Of this latter acreage there were two parcels of 25.75 acres and 135.93 acres found to be unappropriated lands, and the balance of 413.75 acres was found to have been forfeited under a patent issued to Fay and Curtis, the title to which is now held by defendant W. N. Sauers. He was given permission to redeem the same.

The appellant, West Virginia Pulp & Paper Company, claims all of the 1043 acres under certain Pennell patents, issued in 1787. These patents are prior to the Fay and Curtis patent. Consequently, this controversy depends upon the location of the lines of the Pennell surveys, which were made in 1786. The official map filed in this suit is about five feet square and contains several hundred lines and corners. Its size and detail make it impracticable for the purposes of this opinion. I have therefore made a rough composite copy of six of the plats of the Pennell surveys, which is attached hereto for purposes of illustration. Several of the corners are lettered in parentheses as on the official map.

The tract in controversy extends along the exterior line of lots 13 and 9. Whatever of that tract is within that line, belongs to the company and is not forfeited; whatever is without that line, is the property of the State. None of the trees originally marked along the line are now standing, so its relocation is a task assumed by the State. In fact, none of the original corner trees of any of these lots are in existence except the black oak at the common corner of lots 1 and 11. That tree, and the locations of the corners at K and B, respectively, have been recognized as authentic for many years and are not attacked in this suit.

The law governing the establishment of a lost line is merely the expression of common sense. "It is settled prac-

tice, in locating lines, to begin at a known corner, where the other corners are lost, and locate the other corners by the courses and distances mentioned in the survey.'' *Ewell* v. *Hanser,* 140 Ky. 459. *Rock Co.* v. *Young,* 29 U. 108, 118. Allowances should be made for the variation of the magnetic needle from the true meridian as well as for the unevenness of the ground over which each line passes. *Bryan* v. *Beckley,* (Ky.) 12 Am. Dec. 276. The State, however, did not follow the settled practice. Instead of proceeding from an unquestioned corner, its case and the decree in its favor are based on its location of the corner between lots 2, 6, 8, 9 and 10 at F, which location is not only controverted in this suit but has been in dispute for more than seventy-five years. The F corner as located by the State, is at a place between the Dry Fork and Elk River, near their junction. The sketch following illustrates the approximate position of the State's location of F, marked ×, in relation to the extension of the lines from C and B to F, and from K through L to F. The calls noted between K and C, and between C and B are taken from the official survey in this suit.

557

The evidence supporting the State's location of the corner at F is (a) the testimony of a number of men who when boys either saw some vestige or an old cucumber tree or log at this place, or were pointed out the spot by some aged men in the community as a corner of the Pennell surveys (a surveyor's official report in another suit filed in 1871 recites that this cucumber was then fallen and very much decayed); (b) a seeming admission by Brown Jenks who owned some of the Pennell surveys after 1825, that the cucumber at F was his corner; (c) the admission against interest of W. H. Brady, an old citizen who, owned land bordering on a line of Lot No. 6 that this cucumber was a corner of the Pennell surveys; (d) the approximation thereto of the line of lot 6 run upon a "corrected bearing" from the H corner, which is an admitted corner; and (e) the opinion of several surveyors that the original corner was located at or near the place fixed by the State. The opinions of the surveyors, however, are inadmissible under *Mylius* v. *Lbr. Co.*, 69 W. Va. 346, 349; *Fleming* v. *Ry. Co.*, 82 W. Va. 5-6; *Liberty Coal Co.* v. *Bassett*, (108 W. Va.) 150 S. E. 745-6 (advance sheets). See also 9 C. J., p. 287, sec. 345.

The F location is opposed by the following evidence: (1) in making conveyances along the line of lot 6, Brown Jenks established a line which does not run to the F corner; (2) a straight line between the C and B (unquestioned) corners extended toward the F corner, misses the latter by 150 poles; (3) a line run from the K (undisputed) corner S 20 W 1920 poles to the L corner and thence N 70 W 834 poles (allowing the proper variation in each call) misses the F corner by about 70 poles; (4) in two ejectment suits in Randolph county, one tried in 1857 and the other in 1874, the F corner was in question, and in each case the verdict of the jury repudiated it as a Pennell corner; (5) the evidence was made a part of the record in *Middlebrook* v. *Bradshaw,* the case tried in 1857, and was filed in the instant suit. One of the witnesses testifying in that case was W. H. Wilson, a surveyor. He stated that the cucumber (then standing at what is now the F location) was not properly marked as a Pennell

corner but "was marked to suit the calls of Bradshaw's own lines"; that "I never heard it claimed as a corner to Pennell's lot No. 2 until I heard Brawshaw claim it as such"; that Bradshaw objected to the tree being blocked; that later someone did block out all the hacks on the tree, and that the witness counted only about 45 annulations in the part of the tree from which the block was taken. Other witnesses in that case also counted the annulations, and while they did not agree as to the number, none made the count greater than 64. As these counts were made in 1857 the F cucumber could not have been marked prior to 1793 which was seven years after the Pennell corner had been made. While the verdicts of the jury, and the testimony in the case of *Middlebrook* v. *Bradshaw,* are in no way binding on the State or defendant Sauer, yet they are permissible as bearing on the reputation of the F corner.

The evidence opposing the F location, as made by the State, renders it extremely doubtful whether that location correctly represents the Pennell corner; therefore that location should not be used as a point from which to restore the lost line. "A complainant in equity ought not to have relief further than his claim is reasonably certain." *Bryson* v. *Beckley, supra,* p. 284.

However, for the purpose of developing the State's position, let the integrity of its location be assumed. The State admits its location to be inconsistent with the lines of the Pennell surveys, as extended from the unquestioned corners at K, C and B; but contends that as calls, distances, etc., must yield to a natural monument, when established, this inconsistency is immaterial; and that the F corner on account of proximity to the disputed line, should be given the preference in renewing the line, over the more distant established corners.

The Pennell surveys were reported on four consecutive days, showing that the surveying was a continuous project. Lots 1, 2, 10 and 11 are equal rectangles; and there is no apparent reason why or excuse for any corner being materially out of line with the general scheme of the four lots. It

would therefore be manifestly improper to permit the only irregularly located corner, even if authentic, to dominate the reconstruction of the controverted line in preference to several established corners which are regularly located and harmoniously related.

The paper company also attempted to replace the corner between lots 2, 6, 8, 9 and 10 at a point about 150 poles from the State's location, and on the line established by Brown Jenks in conveying tracts along lot 6. Whether the company's location will satisfy the rule for restoring lost corners does not sufficiently appear. It may be that a corner fixed by running on course and distance (with proper allowances) from B, or by intersecting lines run from B and H, respectively, would not coincide with the corner fixed by the company. But the soundness of the company's location is not of importance on this hearing. The company does not lose merely because its location is not sustained. The state's case depends entirely upon the strength of its own location, not upon the weakness of that of the company. As the state has failed to sustain this burden, the decree of the lower court is plainly erroneous, and is accordingly reversed.

*Reversed and remanded.*