LOUIS W. ONEACRE *et al. v.* KATHERINE MOORE *et al.*

(No. 8572)

Submitted May 12, 1937. Decided June 8, 1937.

*Everett F. Moore, F. V. Iams,* for plaintiffs in error.
*W. J. Postlethwait,* for defendants in error.

MAXWELL, JUDGE:

This is an action of ejectment wherein there were verdict and judgment for the plaintiffs. The defendants allege error.

The situs of the controversy is on the west side of State Highway No. 2, about one and one-half miles north of the town of New Martinsville in Wetzel County. The dispute involves the division line between Parcels 8 and 9 of the B. C. Bridgeman farm as subdivided in 1909. Each of the said two parcels contains about four acres and each has been divided into smaller lots. Parcel Number 9 is on the northern edge of the Bridgeman partition. The north line of Parcel Number 9 is the southern line of the Williams farm, which latter line is also referred to in the record as the S. Myers line and the Doolin line. Parcel Number 8 is immediately south of Number 9. Each parcel is supposed to have a frontage of 248½ feet on the highway, and each extends back to the right-of-way of the Baltimore & Ohio Railroad Company. The division line between these two parcels—the line in dispute—is now 646.6 feet long, having been shortened a few feet by the encroachment of the highway on the front of the parcels resulting from the improving of route No. 2 by the state road commission within the last few years. The work incident to the bettering of the highway resulted in obliterating the original front lines of Lots 8 and 9, and the front corner markers.

The plaintiffs own the northern portion of Parcel Number 8, and the defendants the southern part of Number 9. Under the subdivision of Number 8, there is a ten-foot alley extending from the highway a distance of 226 feet along the northern edge of Number 8 and adjacent to the disputed line. This controversy was precipitated when one of the plaintiffs undertook to improve the grade of the alley. Defendants considered that some of the dirt placed in the alley to raise its grade extended over the division line. They then removed part of the dirt and built a fence on what they deemed to be the line. Plaintiffs had the fence removed and soon thereafter instituted

12

this action. The contention involves a strip fifteen and one-half inches in width at the highway.

The parties claim under common grantors who were the Wetzel County Bank and the New Martinsville Bank. The deeds of the common grantors were both executed and acknowledged March 1, 1910. For Parcel Number 8 the conveyance was to L. W. Oneacre, one of the plaintiffs, and for Number 9, the conveyance was to S. Myers. The deed for Parcel Number 9, was recorded March 4, 1910, and the deed for Number. 8 was recorded three days later.

The description of Parcel Number 8 in said deed therefor is as follows: "A certain tract or parcel of land situate in Magnolia district, Wetzel County, West Virginia, and known as Lot No. 8 on the division map of the B. C. Bridgeman farm, described by metes and bounds as follows: Beginning at a stake in the edge of the county road, thence southwest 89 degrees 18 minutes 652 feet to a stake in right of way of the Baltimore & Ohio Railroad Company, thence South 4 degrees 32 minutes west with said right of way 249 feet to a stake, thence north 89 degrees 18 minutes east, 682.5 feet to a stake in said county road, thence along the said county road north 42 minutes west 248.5 feet to the place of beginning, containing 3.9 acres."

In the deed for Lot Number 9, the description is as follows: "A certain tract or parcel of land situate in Magnolia District, Wetzel County, West Virginia, known as Lot No. 9 on the Division Map of the B. C. Bridgeman farm which is described by metes and bounds as follows:—Beginning at a stake in the edge of the County Road a corner to S. Myers, thence N. 85° 30′ W. 633 feet along the line of said Myers land to a stake in the Right of Way of the Baltimore & Ohio Railroad Company, thence with the said right of way S. 4° 32′ W. 309 feet to a stake corner to Lot No. 8 thence with line of said lot No. 8 N. 89° 18′ E. 659 feet to a stake in the edge of the County Road, thence N. 42′ W. 248.50 feet to the place of beginning, Containing 4-1/8 Acres."

Both descriptions are in accord with a plat of the

Bridgeman farm subdivision, which plat was made in 1909 by W. S. Alexander, a civil engineer, and duly recorded.

It may be accepted that between the northern line of Parcel Number 9 and the southern line of Parcel Number 8 there is at the highway a shortage in total width of 15½ inches. The rear end of the division line between Parcels 8 and 9 is fixed at an iron pin in the edge of the railroad right-of-way. This is not controverted.

The plaintiffs take the position that the corners and bounds of Parcel Number 8 are fixed and certain; that there is no shortage in the width of said parcel as so determined. Further, they assert that the defendants, by the terms of the deed under which they claim as remote grantees (description copied above), are bound by the Myers line on the north, and on the south by the north line of Parcel Number 8; and consequently, that the shortage of 15½ inches must be yielded entirely by Parcel Number 9.

It is the contention of the defendants that the true south line of Number 9 is 15½ inches within the alley aforesaid which has been laid off in the subdivision of Number 8; that this line should be established by measuring from a fixed point in the Myers line on the north; that the said shortage of 15½ inches, if such there be, should be apportioned among all nine parcels of the block or section whereof Parcels 8 and 9 constitute a part.

No useful end would be served by a detailed recital of the evidence. For purposes before us it is sufficient to note that the evidence warranted the jury in believing that the corners and boundaries of Parcel Number 8 are as contended for by the plaintiffs. Strongly supporting the jury's verdict are these elements: (a) The testimony of witnesses for both plaintiffs and defendants that they found an iron pin and a stake in the edge of the railroad right-of-way at a point which marks the northwest corner of Parcel Number 8 and the southwest corner of Number 9; (b) testimony that on the opposite

side of the road from Parcels 8 and 9 the true line between Parcels 10 and 11 of the Bridgeman addition is definitely marked, and that that line, when projected across the highway, coincides with the division line between 8 and 9 as contended for by the plaintiffs, and that such line continued in projection to the railroad right-of-way intersects the iron pin mentioned; (c) the fact that the line thus indicated between Parcels 8 and 9 coincides with the Alexander plat and "ties in" with courses and distances ascertained and measured with respect to a large white oak tree which stands on the extreme eastern edge of the Bridgeman farm, more particularly on the rear line of Parcel Number 12. There is testimony that this is the only natural monument in the entire survey. On the Bridgeman subdivision plat the southern line of Parcel 8 when extended eastward forms the division line between Parcels 11 and 12 and terminates at a point in east line of the Bridgeman farm, N. 18° W. 17 feet from a white oak. The western terminus of the line is an undisputed point in the eastern edge of the Baltimore & Ohio Railroad right-of-way. The surveyor appointed by the court surveyed this line, starting from the point at the railroad right-of-way, and running on the call of the Bridgeman plat, N. 89° 18′ E. This bearing carried him to a point 11½ feet instead of 17 feet from the white oak. A correction of 8 minutes in the bearing was therefore necessitated. Thus was determined the correct bearing between two fixed points. On the corrected bearing, N. 89° 10′ E., the surveyor re-ran the southern line of Parcel 8 and set a marker at the edge of the highway. Then, by measuring northward 248.5 feet the front corner between 8 and 9 was ascertained. This coincides with the extension of the undisputed line between 10 and 11, as mentioned. In checking on the oak tree, measurements were made from its center. Also the evidence tends to establish definitely the north lines of Bridgeman Parcels 13 and 14 on the east side of the highway. Proper measurements with relation thereto locate the disputed line as the plaintiffs contend.

Recurrence is now made to the respective descriptions

of Parcels 8 and 9 in the above quoted deeds of March 1, 1910. It is to be noted that Parcel Number 8 was conveyed as an entity of 3.9 acres, part of the Bridgeman farm, and though by the deed it is bounded on the east by the county road (now state highway) and on the west by the Baltimore & Ohio Railroad Company's right-of-way, the deed does not bound Number 8 on the north or south by any named or designated lands. Thus, while the length of the parcel is confined between the county road at one end and the railroad right-of-way at the other, the width is not compressed by adjoiners. The width of the lot must therefore stand as denominated in the deed, unless there is thereby involved an encroachment on other property.

In the quoted description of Parcel 9 the situation is different from that presented in the description in the deed for Parcel 8, though the grant of Number 9 is of an exact area of 4-1/8 acres. In the deed conveying Number 9 the northern bound is the line of the Myers land, and the southern bound is the northern line of Parcel 8. In each of the four successive conveyances carrying title from S. Myers through mesne grantees to Katherine Moore, the southern line of Number 9 is identified with a "line in Oneacre's land," being the north line of Number 8.

The defendants by their testimony definitely fix the Myers line as extending through an iron pin at the northeast corner of Parcel 9. As already noted, the jury was warranted in believing that the northern line of Parcel 8 is properly located as contended for by the plaintiffs. Therefore, the true width of Parcel 9 must be determined by the actual distance between the Myers line on the north and Parcel 8 on the south, regardless of the distances called for in the deed for Number 9.

Where a deed calls for the line of an adjacent tract as a boundary, such line, truly located, will control the grant in so far as that feature of its bounds is concerned, regardless of the effect which may be had on the area of the grant. Where there is a call for a point in the line of an adjoining tract the line must stop there, though short

of the distance stated in the call. "Where the line of another tract is called for in the description in a deed as one of the boundaries of the land conveyed, the line must be run to such boundary line regardless of distance." 2 Devlin on Real Estate (3rd Ed.), section 1034. This rule is confirmed in many cases, among which are the following: *Yonker* v. *Grimm,* 101 W. Va. 711, 133 S. E. 695; *Vandall* v. *Casto,* 81 W. Va. 76, 83, 93 S. E. 1044; *Lewis* v. *Yates,* 62 W. Va. 575, 586, 59 S. E. 1073; *Richmond Cedar Works* v. *West,* 152 Va. 533, 147 S. E. 196; *O'Dell* v. *Swaggerty,* (Tenn.) 42 S. W. 175; *Whittelsey* v. *Kellogg,* 28 Mo. 404.

The principle of apportionment on which the defendants rely is thus succinctly stated: "On a line of the same survey and between remote corners, the whole length of which is found to be variant from the length called for, it is not to be presumed that the variance was caused from a defective survey in any part, but it must be presumed, in the absence of circumstances showing the contrary, that it arose from imperfect measurement of the whole line, and such variance must be distributed between the several subdivisions of the line in proportion to their respective lengths." *Miller* v. *Topeka Land Co.,* 44 Kan. 354, 24 P. 420. Consult: *Pereles* v. *Magoon,* 78 Wis. 27, 46 N. W. 1047, 23 Am. St. Rep. 389; 9 Corpus Juris, p. 295. The rule clearly involves impracticability of application where there are facts and circumstances which are otherwise controlling. In our opinion, the rule cannot properly be applied in the instant case because of the definiteness which the record affords, in determining the exact location of Parcel 8. The rule of apportionment is of secondary application. It must yield to primary evidence of definite description and precise location. Though there may be conflict in the evidence respecting the location of a parcel, if there is sufficient evidence to sustain a jury's verdict fixing the corners and bounds, that is sufficient. Such is the jury's province, and when such finding has been made it is final unless error of law is involved.

As noted above, the defendants claim mediately under

the deed of the Wetzel County Bank and another to S. Myers, March 1, 1910, conveying Parcel 9 of the Bridgeman subdivision. The deed of the same grantors to plaintiff Oneacre for Parcel 8 bears even date with the other deed. By reason of the fact of the recordation of the Myers deed three days prior to the recordation of the Oneacre deed, the defendants contend that they hold under senior title. This contention is based on the statute, Code 1923, chapter 74, section 5; Code 1931, 40-1-9. The statute provides that a deed conveying real estate "shall be void as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record * * *." This statutory provision was inherited by this state from the state of Virginia. In neither state has it been held applicable to a controversy involving the location of a division line. The Virginia court, discussing this statute in *Harman* v. *Oberdorfer*, 33 Gratt. (Va.) 497, 503, said: "By 'subsequent purchasers' are intended, as we think, purchasers of the same subject embraced in the instrument which is declared to be void. This would seem to be the natural construction of the section considered alone * * *". The court further sustained its construction by implication arising from another section of the Virginia Code, not important here. The same interpretation has been applied in this state. In *Renick* v. *Ludington*, 20 W. Va. 511, this court held that the recordation statute "does not apply to purchasers of different tracts or parcels of lands from the same vendor, but refers only to 'subsequent purchasers' of the same subject as that embraced in the instrument declared void." We think, therefore, that the division line between the properties of plaintiffs and defendants must be located without reference to the recording statute.

Another point of error is directed to an opinion expressed by witness G. W. Sammons who was called to the stand by the plaintiffs. Under court order entered in this action, he had made a survey of the premises herein involved. On cross-examination, without being asked for his opinion, he stated: "My personal opinion was that

the 15½ inches shortage belong to Parcel Number 9." A motion to strike out the answer and direct the jury to disregard it was overruled by the court. The location of corners and boundary lines of lands is not a matter of expert testimony. As a general rule such testimony is inadmissible. *State* v. *Pulp and Paper Co.*, 108 W. Va. 553, 152 S. E. 197. Although the giving of such opinions should not be permitted by trial courts, it does not follow that a violation of the rule necessarily injects prejudicial error into the record. In the instant case, for reasons already set forth, we are of opinion that on the competent evidence adduced, there is an emphatic preponderance in favor of the location of the division line asserted by the plaintiffs. In this situation the surveyor's opinion, improperly expressed from the witness stand, was a mere makeweight, and did not materially assist the plaintiffs nor prejudicially affect the rights of the defendants. It was harmless error.

Numerous errors are assigned in respect of instructions given for the plaintiffs over the objection of the defendants, and certain instructions tendered by the defendants and refused by the court.

The six instructions given for the plaintiffs are in accordance with the principles of law hereinabove discussed. These instructions center around the thought that Parcel Number 9 is confined between the Myers line on the north and Parcel 8 on the south, and that Parcel 9 cannot be extended southward even though there be a shortage in its width as recited in the title papers and as portrayed on the plat of subdivision of the Bridgeman farm.

Defendants' instructions 4, 5, 6, 7, 11, and 12, refused, deal in various phases with the subject of adverse possession. These instructions were properly refused because of the insufficiency of the evidence on that point to warrant its being considered by the jury. It appears from the record that until shortly before the institution of this action there had been no question about the division line, and its location had not then been drawn into dispute. There was no assertion of adverse claim. There was mere-

ly a quiescent situation involving no thought of controversy. Further, the defendants' deed could not be deemed color of title beyond the southern bound for which it called, to-wit, the "line of Oneacre's land."

Defendants' instructions 9 and 10, both refused, refer respectively to apportionment and recordation, principles hereinabove discussed and their application to this case disapproved. For reasons stated, these two instructions also were properly refused.

Our conclusion being that there is no prejudicial error in the record, we affirm the judgment of the trial court.

*Affirmed.*