JOSEPHINE ATKINS, Appellant, v. CARL PFAFFE, Appellee.

**Real property:** APPORTIONMENT OF SURPLUS GROUND. Where a pur-
1    chaser bought lots in a block by actual measurement from a
designated corner, and not by lot number, and there was no
evidence to show what was done with the title to the remain-
ing lots in the block owned by the vendor, the doctrine of
apportionment of surplus or deficiency of the ground in the
block has no application.

**Boundaries:** ADVERSE OCCUPANCY. Where by the undisputed evi-
2    dence a lot owner has occupied a house for more than twenty
years, built with the understanding that he owned the ground
covered by it, including that up to a line occupied by the eaves,
a sewer drain immediately thereunder and the space occupied
by the window shutters, all of which was acquiesced in by
the adjacent owner, his right thereto cannot be questioned;
and the line thus established will control the entire length of
the lot.

*Appeal from Keokuk Superior Court.*— HON. W. L. MC-
NAMARA, Judge.

MONDAY, DECEMBER 16, 1907.

THIS is an action in equity, brought by plaintiff to
compel the removal by defendant of certain obstructions
placed on her property by him, and to enjoin further acts of
trespass. On the filing of the petition, a temporary writ of
injunction issued. Following this, and before answer, plain-
tiff came in, and, on application, secured an order requiring
defendant to appear and show cause why he should not be
held in contempt for a violation of the mandate of the tem-
porary writ. In response to such order, the defendant ap-
peared, and made showing in writing against the application.
Therein he traversed the allegations of the petition, and
made averment in specific terms that the property on which
he had entered and erected the structures complained of by

plaintiff was his own property; and that his entry thereon, and what had been done, and was proposed to be done by him was by right. On the matter being called for hearing, the parties proceeded to try their case on merits; and without objection it was so submitted to the court. A final decree making complete disposition of the case followed, and from the provisions thereof, so far as adverse to her, plaintiff appeals.— *Reversed*.

*W. J. Roberts,* for appellant.

*D. F. Miller,* for appellee.

BISHOP, J.— Block 140 in the city of Keokuk is bounded on the east by Ninth street and on the north by Exchange street. The lots in the block face Exchange street, and number west from Ninth street. In October, 1886, plaintiff became the owner of parts of lots 1, 2, and 3, described in the deed to her substantially as the south seventy feet of the north one hundred and five feet of the three lots. In the following year she erected a frame house on the property, facing east on Ninth street, which she has ever since occupied in person or by tenants. In August, 1903, the defendant purchased the north thirty-five feet of the said lots; and they were thus substantially described in the deed to him. His purchase was from one Armitage, who had owned the property at the time plaintiff purchased in 1886. At the time defendant purchased, there was an old building on the property, which in the spring of 1904 he removed, and proceeded to the erection of a new brick dwelling house. As constructed, the south wall of such house is about two feet distant from the north side of plaintiff's house, and it is covered by what is known as a " hip roof "; that is, the roof runs up from each of the four walls to a point in the center. On the south the cornice of the roof is above the cornice of plaintiff's house, and overlaps the same by several inches,

so that water falling upon one-fourth the roof space of defendant's house, if left to itself, will naturally be cast upon the roof of plaintiff's house. During the course of his building defendant occupied the intervening space between the two houses by scaffolding, etc., and this prevented plaintiff from opening and closing, and thus having the use of, the swinging blinds with which the windows on that side of her house were provided. He also built a tight board fence, twelve feet high, extending from Ninth street lot line back to plaintiff's house, the line thereof being a few inches south of the north line of the house. Matters thus stood when this action was brought. The decree of the court below ordered the removal of the high board fence; otherwise, the relief demanded by plaintiff was denied.

As may well be apprehended, the controversy between the parties had its origin primarily in a difference respecting the location of the boundary line between the two properties. It is contended, on behalf of plaintiff, that soon after she built her house a fence was constructed along her north line, and that this was situated some eighteen inches north of the north line of her house, so that the drip from the roof eaves fell upon her own property; that such fence as so constructed was not only on the true line, but it was erected with the knowledge of Armitage, and was acquiesced in by him as marking the boundary line dividing the properties, and that such line remained unquestioned until defendant entered upon his building operations in the year 1904. Accordingly, she insists that her right is perfect both in virtue of actual title and by adverse possession; and from this she insists that the roof of defendant's house, the scaffolding, etc., between the houses, and the high board fence, are on her property, and in violation of her right. On the other hand, it is the contention of defendant that the true boundary line between the properties, as established by actual survey, and marked by landmarks, is about one foot south of the north line of the body of plaintiff's house; that

the board fence built by him is north by a few inches of the line, and hence on his own property; and that such fence occupies the line of the old fence to which reference is made in the evidence of plaintiff.

Respecting the true line of boundary, it would seem that neither party is altogether in the right. According to the plat of the town of Keokuk, the streets are sixty-six

1. REAL PROP-    feet wide, except Main street, which is one
ERTY: appor-
tionment of      hundred feet wide. The blocks are three
surplus
ground.          hundred feet square, and the lots are fifty by
one hundred and fifty feet in size. It will be observed that defendant's deed calls for the north thirty-five feet of the lots in block 140; and, measuring from the line of Exchange street, it is reasonably clear from the evidence that the thirty-five-foot line leaves the body of plaintiff's house to the south by several inches — just how many cannot be told — but that the north eaves or cornice of the house overlaps or extends to the north of such line by several inches. Defendant does not seriously dispute this. His contention for a more southerly line is based upon an unofficial survey made by the city engineer on his, defendant's request, and which resulted in carrying the line about a foot to the south of the thirty-five-foot line. Respecting this, the engineer testified that in making his survey he accepted of some landmarks which he believed accurate, but which he did not verify; that on such survey he found that north and south the blocks overrun three hundred feet, and, dividing up the surplus, it brought the boundary line between these parties far enough south to take in about a foot of plaintiff's house. We need not consider what would have been the effect upon the rights of these parties had they purchased lots in the block — the conveyances then being by lot numbers — and subsequently discovery was made by a survey, official or unofficial, of a surplus of ground in the block. Here the surplus, if such there be, exists, in the length of the lots north and south. Plaintiff bought commencing thirty-five feet south of the

corner of Exchange street and Ninth street, and defendant bought the north thirty-five feet, etc. As to each, the situation is as though actual surveys on the ground had been made, and the quantity of ground purchased marked off by fixed monuments. What was done respecting the remaining portions of the lots we are not advised. For all that appears, the same may now be held, or may have been sold, by the original owner, on the theory that there was a surplus and conveyance made accordingly. To a case presenting such features, the rule for apportionment of surplus or deficiency of ground in a block between the lot owners can have no application. *Bloch v. Pfaff*, 101 Mass. 535.

The conclusion expressed foregoing leaves us to deal with this as the situation: Defendant is south of the thirty-five-foot line with his fence, scaffolding, and roof cornice, the latter overlapping the roof cornice of plaintiff's house, while plaintiff is north of said line with the north roof cornice of her house, and also, as brought out in evidence, by an underground drain directly underneath such roof cornice. As we have seen, one ground upon which plaintiff rests her right to remain undisturbed is title by adverse possession. In our consideration of this phase of the controversy, we shall not undertake to determine where lies the truth in respect of the original division fence or the markings in the retaining walls by which the lots were in part surrounded. Especially as to the fence, witnesses having equal means of knowledge are divided in statement on the subject; and the evidence seems to be in hopeless conflict. But the undisputed fact is that plaintiff's house has stood where it now is, and as it now is, for twenty years. She says she built with the understanding that she was the owner of the ground covered by it, that she has always claimed to be the owner of such ground, and that with full knowledge her claim has been acquiesced in. There is no controverting evidence, and, in view of the situation, her right cannot be gainsaid. The line up to which

2. BOUNDARIES:
adverse
occupacy.

she has occupied by her eaves, window blinds, and sewer drain must be held to be the boundary line. *Miller v. Mills Company,* 111 Iowa, 654; *O'Callaghan v. Whisenand,* 119 Iowa, 566.

As here the subject of inquiry, occupancy, cannot be understood as limited to the line of the foundation wall, in view of the facts here shown, it must be held to include the space covered by the roof cornice, as well as that occupied by the movement of her window shutters and the drains. As supporting this conclusion, see *Carbrey v. Willis,* 7 Allen (Mass.) 364 (83 Am. Dec. 688); *Smith v. Smith,* 110 Mass. 302; *Murphy v. Bolgor,* 60 Vt. 723 (15 Atl. 365, 1 L. R. A. 309); *Wilmarth v. Woodcock,* 58 Mich. 482 (25 N. W. 475). So, also, under circumstances of the case, the line of occupancy of the structure must be regarded as fixing the boundary line from the street line to the west limits of the properties. *O'Callaghan v. Whisenand, supra.* From what has been said, the conclusion follows that, to the extent of plaintiff's occupancy, defendant should be required to remove the obstructions placed by him between the buildings. The requirement of the decree that defendant remove the high board fence erected by him was altogether proper. In some of the States it has been held that the existence of a spite fence may be abated, even though altogether on the land of the adjoining owner erecting the same. As the defendant has not appealed, however, we need not enter upon a discussion of the subject.

For the reasons we have stated, the decree as entered failed to award to plaintiff the rights in full to which she was entitled, and it is reversed, and the case ordered remanded for a decree in harmony with this opinion. All costs in this court and the court below should be taxed to defendant.— *Reversed.*