[Civ. No. S. C. 22. Second Appellate District, Division One.—March 12, 1937.]

FRED HOFFMAN et al., Respondents, v. HELEN HUBBS VAN DUZEE et al., Defendants; CLARA R. HUBBS, an Incompetent, etc., et al., Appellants.

Martin M. Levering and Hugh W. Day for Appellants.

Denio, Hart, Taubman, & Simpson for Respondents.

SHINN, J., *pro tem.*—Plaintiffs had judgment in an action to quiet title to a city lot and defendants appeal.

According to a map of the Hubbs tract recorded in 1906, there was a block of seven lots facing on Anaheim Street in the city of Long Beach between Alamitos Avenue on the west and Orange Avenue on the east, having a total frontage of 428.95 feet. The lots were numbered consecutively from one on the west to seven on the east; each had a frontage on Anaheim of 60 feet, with the exception of lot one, which was shown on the map to have a width of 63.95 feet, and lot seven, which was shown to be 65 feet in width. This controversy is between plaintiffs, owners of lot three, and defendants, owners of lots one and two. It arises out of the claim made by defendants that the block as originally laid out was actually 431.60 feet in length between Alamitos and Orange Avenues, or 2.65 feet in excess of the length shown on the map. Defendant Clara R. Hubbs, here represented by her guardians, was the original owner of the subdivision, and the lots sold in the tract, including lot three, were conveyed by reference to the recorded map.

Defendants contend that such excess of frontage as exists should be allocated to their lot one under rules which it is not necessary to state. Plaintiffs contend, and the court found, that the recorded map was correct and that no such excess existed in the block.

It is evident that the whole case turns upon a question of fact. If the court's finding that the map was not proven to be incorrect is supported by the evidence, the case is disposed of, and it becomes unnecessary to determine how any excess

frontage should be allocated as among the owners of the several lots in the block.

The contention of defendants is that the map was in error in that it failed to include within the boundaries of the block as delineated all of the land facing Anaheim Street between Orange Avenue and Alamitos Avenue. The question which the court had to decide was the width of the block in 1906, at the time the land was surveyed and platted into lots. ■ The court assumed, to start with, that the map was correct; this was a proper assumption. (*O'Farrel* v. *Harney*, 51 Cal. 125.) When defendant Clara R. Hubbs conveyed plaintiffs' lot three by reference to the recorded map, the map thereby became a part of the conveyance so far as the location of plaintiffs' lot was concerned. (*Churchill Co.* v. *Beal*, 99 Cal. App. 482 [278 Pac. 894]; *Craign* v. *Powell*, 128 U. S. 691, 696 [9 Sup. Ct. 203, 32 L. Ed. 566, 568]; followed in *Kneeland* v. *Korter*, 40 Wash. 359 [82 Pac. 608, 1 L. R. A. (N. S.) 745]; 4 R. C. L. 117; 22 R. C. L. 283.) ■ The deed to lot three is to be understood as plaintiffs contend, and as the court found, namely, as a conveyance of a parcel of land 60 feet in width on Anaheim Street, commencing 123.95 feet east of Alamitos Avenue, such being the width of defendants' lots one and two. Dimensions shown on recorded maps used and referred to in conveyances for the purpose of description express the understandings and agreements of the parties with reference to the location and boundaries of the land conveyed. They are to be taken as correct until shown by clear proof to be in error. At the trial plaintiffs relied upon the map and did not have to prove its correctness. The map itself until shown to be incorrect, furnished proof of the fact that the west line of plaintiffs' lot was 123.95 feet east of the intersection of Alamitos Avenue and Anaheim Street, that intersection being the northwest corner of the block. In other words, the map which plaintiffs introduced in evidence made out a *prima facie* case for the relief which they sought. Defendants, who sought to impeach the map, had the burden of proving that it was incorrect. They undertook to prove that the block was 431.60 feet long at the time the land was surveyed and the map was recorded. In their attempt to do this they proved the results of a survey made in December, 1934, by C. W. Cook, a licensed surveyor, who testified as a witness. His testimony related to the distance between the west line

of Orange Avenue and the east line of Alamitos Avenue. The weakness of this evidence is found in the fact that his survey was made from initial points not identified with the original survey. Defendants did not produce the field notes of the original survey, nor did their later survey purport to be a resurvey which used any of the initial points or monuments of the original survey. It was based upon information which Mr. Cook received in the office of the city engineer as to certain monuments which had been set by the city engineer purporting to mark the centers of street intersections of the four streets surrounding the tract. It was not shown when or how these monuments were set, nor were they verified by any kind of proof. Mr. Cook found no stakes or other boundaries marking what he used as the north corners of the block in making his measurement of the length of the block. The trial court was not obliged to find that Mr. Cook's survey was more accurate than the original survey. It could be no better than its starting points, and as the authenticity of these was in doubt, the survey as a whole was inconclusive. As no evidence except the map was offered as to the actual location of the streets in 1906, the proof of defendants failed to show that the distance between the streets as they were located in 1906 was any greater than that shown on the map. Defendants' survey, in so far as it was based upon information obtained from the city engineer's office, was not sufficient to prove that there was an excess of frontage in the block over that shown on the map. The trial court could not speculate as to matters which the proof left in doubt. Nor can this court weigh the evidence, as appellants desire us to do, and reach a finding contrary to that of the trial court.

Mr. Cook found certain surveyor's stakes, one 305 feet and the other 365 feet west of what Mr. Cook took to be the northeast corner of the block. Mr. Hubbs measured from what he took to be the northeast corner in 1918 and found the same stakes which Mr. Cook discovered. According to the map, these should have marked the north corners of lot two, and if they were true corners, plaintiffs' lot three lay 126.60 instead of 123.95 feet east of Alamitos Avenue. These stakes were not identified as original stakes. While they were described as surveyor's old stakes, no one knew when or how they had been placed. Unidentified as they were, they did not prove the original survey to have been in error in its measurement

of the length of the block, and, of course, unless shown to have been the original stakes, they could not have been accepted as marking the north boundaries of lot two and the north common corner of lots two and three.

Section 2077 of the Code of Civil Procedure provides: "6. When the description refers to a map, and that reference is inconsistent with other particulars, it controls them if it appear that the parties acted with reference to the map; otherwise the map is subordinate to other definite and ascertained particulars." Here the parties acted with reference to the map; that much is certain, and it does not appear that they acted with reference to any monuments on the ground or to boundaries other than those delineated on the map. It is unnecessary for us to decide what the result would have been if the stakes found by Mr. Cook and Mr. Hubbs had been identified as monuments placed in the original survey. They were not so accepted by the trial court and therefore they did not show plaintiffs' lot to be in a position other than its location as shown on the map. We are bound by the implied finding of the trial court on this point.

The decree quieted plaintiffs' title to "All that portion of the Hubbs Tract, as per map thereof recorded in Book 11, page 129 of Maps, in the office of the County Recorder of Los Angeles County, within the following boundary: Beginning at a point in the most northerly boundary line of said Tract distant 123.95 feet east from Alamitos Avenue; thence Easterly along said Northerly line of said Tract, to the Westerly line of Lot Four (4) in said Tract; thence Southerly along said Westerly line of said Lot Four (4) a distance of 100 feet; thence Easterly (sic) and parallel to said Northerly line of said Tract to a point distant 149.53 feet from Alamitos Avenue; thence Northerly to the point of beginning." Plaintiffs were entitled to a decree in this form. The evidence of the defendants was insufficient to show that plaintiffs' lot was located otherwise than as stated in the decree.

Plaintiffs' lot, however, is only 60 feet in width, regardless of its location. It is bounded on the east by lot four, which is only 60 feet east of lot two, and the decree does not, as appellants contend, award plaintiffs any excess frontage. Neither plaintiffs nor defendants established any title to parcels of land of greater area than those shown by the dimensions of their respective lots on the map. It is regrettable that the proof

·was so inconclusive, but there is nothing we can do about it. Further surveys may prove that the length of the block is greater than that shown on the map. If such excess exists and it is found to be due to an error in the original survey, a question would immediately arise as to the proper allocation of this excess. The owners of lots four, five, six, and seven would have to be brought into court before any final determination could be made as to the proper allocation of any excess that exists. No decree which could be made in this case and which awarded any of the present parties any share of excess frontage would be binding upon the owners of lots four, five, six, and seven. The owners of these lots would be entitled to assert their claims, if any they have, to a proportionate share of such excess land, and it would be necessary for the court to pass upon the merits of their claims, as well as those of the parties to this action.

There is no error in the record justifying a reversal of the judgment. The fact that all the parties were not before the court who should have been before the court for a complete determination of the controversy, and the further fact that the evidence was so incomplete as to make a full determination impossible, furnish insufficient reasons for a reversal. There would be no end to litigation if cases were sent back for retrial for the sole purpose of allowing a losing party to prove some fact which he had failed to prove upon a former trial.

The judgment is affirmed; the appeal from the order denying a new trial is dismissed.

York, Acting P. J., and Doran, J., concurred.