[Civ. No. 8367. Third Dist. Oct. 14, 1954.]

BIRNET T. MADDEN et al., Respondents, v. ALPHA HARDWARE AND SUPPLY COMPANY (a Corporation), Appellant.

John L. Larue for Appellant.

Guy A. Ciocca for Respondents.

PEEK, J.—Plaintiffs sought to quiet title to certain property in the town of Allegheny, Sierra County, alleging ownership, possession for more than 20 years and payment of taxes for 10 years. (Code Civ. Proc., §§ 738, 749, 749.1.) Defendants denied generally the allegations of the complaint, and by way of cross-complaint sought to quiet their title to the property under the provisions of said code sections. From the judgment which was entered in favor of plaintiffs and from the order denying their motion for a new trial, the defendant Alpha Hardware and Supply Company, a corporation, alone has appealed.

Two contentions are made by appellant, neither of which appears to be well founded; (1) that plaintiffs are not entitled to maintain the action, and (2) that appellant is entitled to a judgment quieting its title by adverse possession.

Viewing the record as we must in support of the judgment, it appears that plaintiffs purchased the land which was known as the Greenback property in 1950 from Alvin C. Gay and wife, who in turn had purchased the same in 1946 from Clayton and Gladys Johnson, whose title dates back to 1913. When

plaintiffs and the Gays purchased the property, they were cognizant of a service station located thereon which was being operated by employees of the store located directly across the street. However it was their understanding that the possession and operation of the station were permissive in that the owners of the land had allowed the same to be so used as a public service to the small community of Allegheny. Neither plaintiffs nor their predecessors ever made inquiry of the store operators as to claim of ownership. This dispute concerns only that portion of the land upon which the station is situated.

The station was originally established by one Hawkins with the permission of the Johnsons. Hawkins died in 1938 and the defendant Cassidy was appointed administrator of his estate. It is stated by plaintiffs in their brief and not denied by appellant that the property in question was not listed as an asset of the estate in the inventory filed by Cassidy. Thereafter Cassidy and the Hawkins heirs caused the incorporation of the Raymond Patrick Hawkins Company, with Cassidy acting as president, and one month later the personal property of the estate, including the gasoline pumps, fixtures and merchandise, was sold to that corporation which continued to operate the store and service station. In 1945 the name of the Hawkins Company was changed to the Alpha Sierra Company, and Cassidy continued in the capacity of president. Also in 1945, after negotiations by Cassidy, two deeds from Hawkins' heirs to the appellant were recorded, purporting to convey the real property therein described "being all of the interest acquired by First Parties by decree of final distribution" in the Hawkins estate.

Appellant admits that at the outset the original possession of the land in question was permissive. At the trial it was stipulated that an abstract of title and supplement thereto introduced in evidence by plaintiff was a true and correct statement of the facts shown. Therein the chain of title is set forth as well as a copy of the assessment rolls of Sierra County showing that taxes were at all times assessed to and paid by the record holders of the property. It was further stipulated that taxes for the years 1946 to 1950 were also assessed to and paid by the appellant, thus indicating a double assessment and payment. The only apparent dispute concerns the tax bill for the year 1945-46 which was marked "paid December 1, 1945, by W. D. Johnson." The bill itself was typed out in the name of "Alpha Sierra Company, Fred F. Cassidy" over which had been rubber-stamped the name of appellant. Cassidy

testified the assessment was actually paid by appellant, but the amount was never charged back to the one assessed, the Alpha Sierra Company.

On the evidence so summarized the trial court found that plaintiffs were the owners in fee of the property; that they had been in continuous possession thereof for more than 20 years; that they had paid all taxes assessed against the property for the period of 10 years immediately preceding the filing of the action and the implied finding that such possession as was had by defendants was permissive only.

Defendant, in support of its first contention, argues that plaintiffs have failed to show payment of taxes for the prescribed period and that defendant's adverse possession has been open, notorious and exclusive since 1935, the inception of the service station.

It should be noted that the primary question for determination is the validity of plaintiffs' title, if any—not the strength or weakness of defendant's title; in other words, the sufficiency of the evidence to support the finding of the trial court that plaintiffs have title to the property in question.

The plaintiffs, having shown legal title in themselves, it is presumed that they were possessed of the property within the time required by law and that the occupation thereof by defendant is deemed to have been in subordination of plaintiffs' title, unless it be shown that defendant's possession was adverse for the statutory period. (Code Civ. Proc. § 321.) Thus the burden was cast upon defendant to affirmatively establish its alleged adverse possession. (*Westphal* v. *Arnoux*, 51 Cal.App. 532 [197 P. 395].) And since Hawkins' possession admittedly was with the permission of the Johnsons, the permissive character of such possession would continue until there had been a disclaimer by defendant by the assertion of an adverse title with notice to the plaintiffs. (*Oglesby* v. *Hollister*, 76 Cal. 136 [18 P. 146].)

To rebut this rule, defendant asserts that since 1935 its possession had been open, notorious and exclusive, and that it has paid taxes for the five years immediately preceding the filing of the action. In addition it is argued that the probate proceedings in the Hawkins estate and the recordation of the deeds from the Hawkins heirs were notice to the subsequent purchasers of the contents thereof.

It is true that recordation of an instrument is constructive notice of the contents thereof to subsequent purchasers, and that such knowledge is conclusive; however, this

rule contemplates only conveyances by one having legal title to the property involved. Plaintiffs assert, and it is not denied by the defendant, that the only real property included with the decree of distribution related to a parcel other than that here in question. Necessarily, therefore, the Hawkins heirs had no title to convey, and hence the two quitclaim deeds which Cassidy subsequently negotiated, each of which was void on its face, could not affect the title, and gave no notice to anyone.

■ In other words, as this court said in *Yuba River Sand Co.* v. *City of Marysville*, 78 Cal.App.2d 421 at 430 [177 P.2d 642]:

"Naturally, the value of a quitclaim deed depends upon the record title upon which it is founded. In the absence of evidence to refute the presumption that it is founded on some record title, it may furnish a prima facie showing of color of title indicating hostility of possession. But when the evidence shows, as it does in the present case, that the heirs of a deceased person who executed the quitclaim deed, had no title because the deceased had no title to the property, it furnishes no substantial evidence of hostility of possession. Under such circumstances it has been held that a quitclaim deed is valueless and ineffectual as evidence of adverse hostility of possession."

Defendant has pointed to no evidence of any privity between the Hawkins corporation, the purchaser at the sale, and the estate of decedent, the alleged owner of the real property; nor has defendant referred to any evidence tending to show that the successive operators of the business had any contractual relationship with decedent's heirs who purportedly succeeded to the ownership of the property.

Defendant, in addition, contends that even in the absence of any showing of adverse possession by its predecessors in interest, there was sufficient evidence to entitle it to judgment pursuant to Code of Civil Procedure, section 322, which relates to occupation under a written instrument or judgment with continued occupation and possession of the property for a period of five years. However neither the 1945 deeds nor the decree of distribution could have furnished color of title since the property was not included as one of the assets of the estate, nor can it be said that defendant's claim was made in good faith. ■ Possession under color of title must be in good faith, and if it appears that the claimant knew that the deed conveyed no title, legal or equitable, it is not such as to entitle the claimant to the benefit of the rule as to con-

structive possession. (*Wilson* v. *Atkinson,* 77 Cal. 485 [90 P. 66, 11 Am.St.Rep. 299].) Here there can be no question as to Cassidy's knowledge of the facts surrounding the entire matter by reason of his intimate connections with the various corporate operators of the service station, and his position as administrator of the estate. This sufficiently supports the inference that he had knowledge of the lack of title and that when he negotiated the purported purchase of the property by appellant, he did so in bad faith.

The judgment and order are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 9, 1954.