[Civ. No. 16745. First Dist., Div. Two. June 18, 1956.]

SALVATORE BALESTRIERI et al., Respondents, v. M. S. SULLIVAN et al., Appellants.

WILLIAM J. SULLIVAN, Appellant, v. SALVATORE BALESTRIERI et al., Respondents.

[Consolidated Cases.]

Phil F. Garvey and Julia M. Easley for Appellants.

Jackson, Barbarotto & Lank and Nicholas Barbarotto for Respondents.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court in and for the City and County of San Francisco in favor of respondents granting a mandatory injunction enjoining appellants from maintaining a certain fence and ordering the removal thereof, and for general damages in the sum of $500.

Respondents, Salvatore and Josephine Balestrieri, husband

and wife, filed their first amended complaint on November 19, 1952, for mandatory injunction for a continuing trespass, alleging that a fence built and maintained by defendants along the northeast boundary of appellants' land extends and encroaches upon respondents' land for a distance of from 12 to 18 inches, ousting respondents from possession of said strip of land. It was further alleged that this fence was built without right and without consent of respondents, and that it is so close to respondents' house as to prevent passage between said house and the fence. Damages were alleged to have resulted to respondents' house because of the accumulation of water between appellant's fence and respondents' house, causing cracks and leaks which have become increasingly worse because of respondent's inability to get into the area to make repairs, and appellant's continued refusal to remove the fence. The allegation of said damage was in the sum of $3,100. The property of both parties herein is adjoining residential property in the city of San Francisco.

The complaint set forth the description of appellants' property as beginning at a point 160 feet northeasterly from the point of intersection of the southeasterly line of Huron Avenue with the northeasterly line of Farragut Avenue, and running northeasterly along the southeasterly line of Huron Avenue for a distance of 53 feet 4 inches. Respondents' property is described as beginning at a point 213 feet and 4 inches northeasterly from the aforesaid point of intersection of Farragut and Huron Avenues, and running northeasterly along the southeasterly line of Huron Avenue for a distance of 26 feet 8 inches. It was alleged that these descriptions were taken from West End Map Number 2, filed on May 1, 1863, in the office of the recorder of the City and County of San Francisco.

Appellant William Sullivan, son of appellants, M. S. and Bridie Sullivan, filed an answer denying the material allegations of the complaint, and setting up the affirmative defenses of various statutes of limitations. (Code Civ. Proc., §§ 318-322, 324 and 338, subd. 2.) This appellant also filed a cross-complaint alleging ownership of the property on Huron Street, beginning at a point 160 feet northeasterly of Farragut Avenue and extending northeasterly along the southeasterly line of Huron Avenue for a distance of 55 feet 1¼ inches.

Appellants M. S. and Bridie Sullivan denied generally the material allegations of the amended complaint, admitted

that they had been owners of the real property described in the complaint prior to February 8, 1946. They further alleged that ever since April 3, 1918, they had enclosed with a fence, and were the owners and in peaceable possession, of the property beginning at a point 160 feet northeasterly of the intersection of Huron and Farragut Avenues, and running northeasterly along the northeasterly line of Huron Avenue for a distance of 55 feet 1¼ inches. They also pleaded the bar of the same statutes of limitations that were pleaded by William Sullivan.

It was established at the trial that appellants, M. S. and Bridie Sullivan, were the owners and in possession of the real property on Huron Avenue as described in respondents' complaint from March 29, 1918, until February 8, 1946, when they conveyed it to their son William. There was abundant evidence to prove that the elder Sullivans claimed the property according to the legal description in their deeds, which showed that the parcel of property consisting of two lots extended for 53 feet 4 inches along Huron Avenue from a point 160 feet northeasterly of Farragut as set forth in the complaint and not for 55 feet 1¼ inches as alleged by appellants.

The testimony of appellants' own witness, J. E. Waite, a civil engineer, makes it clear that the fence is entirely on respondents' property. Appellants' exhibit 4, a survey map made by Waite, clearly shows that the Sullivan property begins at 160 feet from the intersection of Huron and Farragut, and that it extends along Huron for just 53 feet 4 inches. The fence thereon is shown entirely on the respondents' property. This witness testified that there is a surplus of 1 foot 7 inches in this block, the survey showing the total frontage of the lots in this block on Huron Avenue as 481 feet 7 inches, whereas the official maps all state the block length as 480 feet. Waite said that he did not attempt to locate where this surplus was located. However, the map prepared by him divides the block into three sections, the first measuring 160 feet from Farragut Avenue to the beginning of the Sullivan property; the second, the 53 foot 4 inch frontage of the Sullivan property; the third, from the beginning of the Balestrieri property to the other end of the block at Whipple Avenue is shown as 266 feet 8 inches plus 1 foot 7 inches. This map would therefore indicate that the surplus is located somewhere between the respondents' property and Whipple Avenue.

A licensed surveyor, Albert Warber, a witness called by respondents, testified that he had surveyed Lot 42, respondents' lot, before the house was built thereon, and that he located the surplus of 19¼ inches in the block as lying between respondents' Lot 42 and the adjoining Lot 43. The legal description of Lot 43 describes it as beginning 210 feet southwest of Whipple Street with a 30 foot frontage. According to the official maps this would leave 26 feet 8 inches remaining between Lot 43 and Lot 41, and this is the record length of respondents' Lot 42 as measured from Farragut Avenue. However, the survey made from Whipple Street following the legal description of Lot 43 brings it to within 19¼ inches of the boundary of respondents' lot, thus definitely locating the surplus in that area. The trial court found that the excess of 19 inches in Block 7100 was not located in the area adversely claimed by William Sullivan, and in no way affected the strip of land enclosed by the fence. This finding is supported by the above evidence, so it will be unnecessary to devote further attention to the portion of appellants' brief devoted to proving that the fence is located in the surplus area in the block which they were claiming adversely.

On February 8, 1946, Michael and Bridie Sullivan deeded their entire parcel of land on Huron Avenue to their son, William Sullivan, a single man. The grantors continued to live on the property with their son and paid $20 per month rental to him. Michael Sullivan testified on cross-examination that when he built the fence he thought it was on the border of his property, that he intended to construct it on land conveyed to him by his deed, that he did not intend to erect it on anyone else's land. It was not until he had the survey made by Waite on July 6, 1948, that he learned that the fence was not on his own property. When he was informed sometime after June 1947, by the foreman of the Frank-Vignati Corporation, which constructed the home later purchased by the respondents, that the fence was on the corporation's property, he said he would remove it. Later he said that he would not.

Appellant William Sullivan testified that he did not know that the fence was not within the boundaries of the land conveyed to him by his father by the deed of February 8, 1946; that on his behalf his father had the survey made by Waite; that when he received the deed he did not intend to claim title to someone else's property, but only the prop-

erty described by the deed. He paid taxes on Lots 40 and 41, but paid no taxes on Lot 42. On September 10, 1948, William Sullivan conveyed the Huron Avenue property to Patricia Cunningham without consideration. On the same date Patricia Cunningham reconveyed the same property to William Sullivan. She recorded her deed on September 10, 1948, but William Sullivan did not record his deed until January 7, 1953. The description in these deeds described the property as embracing the strip of property on which the fence was located, adding approximately 19 inches to the frontage of the property described in the deed from Michael to William Sullivan. From 1948 to 1951 the taxes on Lot 41 were assessed to Patricia Cunningham and the tax bills were sent to her.

The taxes on respondents' Lot 42 had become delinquent for the fiscal year 1948-1949, but the property was subsequently redeemed and all taxes from that year until the time suit was brought had been paid by respondent Salvatore Balestrieri.

Alfred Abrahamsen, the supervising clerk in the assessor's office, testified that Lot 40 was assessed at a frontage of 33 feet 4 inches; Lot 41, at a frontage of 20 feet; and Lot 42, at a frontage of 26 feet 8 inches. This shows a total frontage of the Sullivan property of 53 feet 4 inches, which is the same as the total shown in the original deeds, and the same as shown on the survey of appellants' witness Waite.

Floyd Frank, president of the Frank Vignati Building Corporation, which built respondents' house, testified on their behalf that the entire area in respondents' Exhibit C, showing water stains inside the respondents' basement is covered on the outside by appellants' fence, and that the side of the home cannot be repaired unless the fence is removed. Mr. Frank stated that he found water stains inside the basement of the house adjacent to the fence, where the water had been leaking through. He said the leakage could be prevented by calking on the outside, but this could not be done while the fence was in its present position. Respondent Salvatore Balestrieri stated that rainwater comes into his basement from the side of the house next to the fence, that the condition has become worse each winter since he has lived there, that he told the Sullivans of the necessity for repairs and asked Michael Sullivan for removal of the fence but that he just walked away and ignored him. The water

which accumulates between the fence and the house cannot be drained because there is no room to get between the house and the fence.

Appellants contend that the judgment is erroneous as a matter of law because the conclusions of law are erroneous and not supported by the findings of fact. Conclusions of law numbered 1(a) states that respondents are owners in fee simple of the real property described in paragraph I of the first amended complaint. Said complaint sets forth the description of respondents' property in paragraph II of said complaint, paragraph I containing only allegations concerned with First Doe and Second Doe named therein. Paragraph I of the findings of fact sets forth in full the legal description of respondents' property as it is set forth in paragraph II of the complaint, and it is again similarly set forth in the judgment. The discrepancy in the conclusions of law is obviously the result of a typographical error. The findings of fact herein obviously support the judgment in regard to the description of the property.

It is argued that since the trial court found that there was a surplus of 19 inches in this block on Huron Avenue, the judgment herein should not have been rendered, for the general rule is that when such a surplus is found, it must be prorated among the several lots in the block. (11 C.J.S. 737, § 124; *Brumley* v. *Hall*, 110 Cal.App.2d 638 [243 P.2d 27].) In *Hoffman* v. *Van Duzee*, 19 Cal.App.2d 517, 522 [65 P.2d 1330], it was said that the other lot owners not then before the court, would have to be brought in before any final determination could be made concerning the excess footage in the lot, and the merits of their claims would have to be passed upon.

The article on the apportionment of an excess or deficiency in Corpus Juris Secundum (11 C.J.S. 737) discloses that there are many exceptions to the general rule of apportionment as stated above. "The application of the rule depends on causes that contribute to the error in the original survey or plat, and it must yield to primary evidence of definite description and precise location." (P. 738.) It has been held that a shortage of distance in a block will not be apportioned among all lot owners where facts and circumstances specifically locate the shortage (*Oneacre* v. *Moore*, 119 W.Va. 10 [191 S.E. 862]). Where purchasers bought lots (as in the present case) not by lot number, but by actual measurement from a designated corner, and nothing was

shown as to what was done with the remaining lots owned by the vendor, the rule of opportionment was not applied. (*Atkins* v. *Pfaffe*, 136 Iowa 728 [114 N.W. 187].) It is entirely possible that the surplus herein may long ago have been acquired by adverse possession by the owner of Lot 43 by respondents or partly by each of the adjoining owners.

It is clear from the record that none of appellants had any knowledge that there was a surplus in the block at any time prior to the survey in July of 1948. The evidence previously reviewed herein is sufficient to support the finding that "M. S. Sullivan and Bridie Sullivan, predecessors in interest to William Sullivan, intended to construct the said fence on their own true boundary line, and said parties and William Sullivan never intended to claim title to any land not included in their own deed description until the year 1948, when a survey made by said Sullivans disclosed that said fence enclosed a portion of the adjoining property owned by Salvatore and Josephine Balestrieri." It is also sufficient to support the finding that the surplus is not located in the area claimed in this action.

It is urged that since the assessor testified that no taxes were paid on the excess 19 inches of frontage, that the fact that the Sullivans did not pay taxes on the strip claimed cannot be considered as a factor preventing them from acquiring title citing the *City of Santa Clara* v. *Ivancovich*, 47 Cal.App.2d 502 [118 P.2d 303], to the effect that where no taxes are assessed on a strip of land claimed adversely, failure to make tax payments thereon will not prevent title being acquired by adverse possession (and see *Ortiz* v. *Pacific States Properties, Inc.*, 96 Cal.App.2d 34 [215 P.2d 514]). However, in the present case the strip claimed by appellants was part of the land included in the legal description of respondents' property on which taxes were levied, and which taxes were paid by respondents. The surplus area untaxed was on the other side of respondents' property between respondents' lot and Lot 43.

The record establishes that the elder Sullivans held their property claiming under the legal description in their deeds, and paid the taxes only on the frontage assessed in accordance with that description throughout all the years from 1918 up until at least June, 1947, when construction began on the adjoining lot. Since the original complaint herein was filed on March 25, 1952, five years have not elapsed since that time. The record also establishes that since 1947, they

have paid taxes only on the same assessed frontage as they paid on prior to that time. The record shows without conflict that the taxes on the disputed strip were never paid by the Sullivans, but have been paid by the owners of Lot 42. There was no proof of a double assessment or double payment of taxes. It therefore appears to be unnecessary to discuss at length the numerous cases cited by the parties dealing with all the other necessary elements of adverse possession, since without a showing that taxes assessed were paid by appellants, title by adverse possession is not established. (Code Civ. Proc., § 325.)

This case is distinguished from *Sorensen* v. *Costa,* 32 Cal.2d 453 [196 P.2d 900], cited by appellants, where the adverse possession resulted from a mistaken description in the deeds, and the tax assessment rolls also contained the mistaken description. Therefore the claimant had actually paid the taxes assessed on the property occupied. That is not true in the present case. In *Carr* v. *Schomberg,* 104 Cal.App.2d 850 [232 P.2d 597], it was held that where there is a boundary dispute and the parties have agreed on a boundary, the payment of taxes according to the deed descriptions amounts to payment of taxes on the area up to the agreed upon boundary. In the instant case, however, appellants have not offered any evidence of a boundary dispute at any time prior to June, 1947, and no evidence whatever of any agreement on a boundary by respondents or their predecessors in title.

It is urged that in any event, because of appellants' long continued possession of the strip, respondents cannot quiet title, for they must show that they were seized or possessed of the property within five years preceding the action. (Code Civ. Proc., § 318.) Recovery was denied in *Cocking* v. *Fulwider,* 95 Cal.App. 745 [273 P. 142], where defendant proved actual possession for 30 years, although defendant was unable to get title by adverse possession because of failure to pay taxes. In that case there was evidence that in the year 1888 the adjoining owners had agreed upon the common boundary, that this boundary had been acquiesced in for more than 30 years by the parties and their predecessors in title. In 1917 a new survey was made under which appellant claimed title to a strip of land beyond the old boundary.

In *People's Water Co.* v. *Boromeo,* 31 Cal.App. 270 [160 P. 574], an ejectment action, it was held that findings that defendants were in open, notorious possession of the land for a period of five years preceding the bringing of the action,

and that plaintiffs were seized of said land within the last five years as required by section 318, Code of Civil Procedure, where the defendants had not paid the taxes for the requisite years, were not inconsistent. It was said that seisin of plaintiff in the premises was the right of possession which could only be destroyed by defendants' compliance with the requirements for establishing title by adverse possession, and that section 318 is to be read in connection with sections 322, 323 and 325 of the same code which set forth the legal prerequisites for such title by adverse possession as would defeat plaintiff's seisin in law. In *Westphal* v. *Arnoux*, 51 Cal. App. 532, 534 [197 P. 395], an ejectment action, it was said that the requirement of section 318, Code of Civil Procedure, was satisfied when it was shown that plaintiff had legal title, and that the burden was then placed on defendant to show that he had held the property adversely for five years. In the recent case of *Madden* v. *Alpha Hardware & Supply Co.*, 128 Cal.App.2d 72, 75 [274 P.2d 705], it is said that plaintiffs having shown legal title in themselves "it is presumed that they were possessed of the property within the time required by law and that the occupation thereof by defendant is deemed to have been in subordination of plaintiff's title, unless it be shown that defendant's possession was adverse for the statutory period." (And see *Wilkerson* v. *Thomas*, 121 Cal.App.2d 479, 486 [263 P.2d 678].)

As for appellant's contention that their claim was under color of title, the evidence shows that the first time the strip of land was included in any deed held by appellants was when William Sullivan on September 10, 1948, included this area in the deed of Lot 41 to Patricia Cunningham. She then deeded the same area back to him on the same date. That was less than five years before the commencement of this action.

Appellants contend that even if they have not acquired title by adverse possession to the strip of land, they have acquired a prescriptive easement for maintenance of the fence in its present position. The court found that it had been created by Michael Sullivan as a division fence in 1918. The first evidence of a protest regarding the location of the fence was made by Mr. Frank in 1947, one of respondents' predecessors in title. The fence had then been in existence for about 29 years.

The same elements required to establish title by adverse possession of realty are necessary to acquire an easement

by adverse possession except payment of taxes in the latter case need be shown only when the easement is separately assessed. (*Hahn* v. *Curtis*, 73 Cal.App.2d 382 [166 P.2d 611]; *Dooling* v. *Dabel*, 82 Cal.App.2d 417 [186 P.2d 183]; *Moots* v. *Kasten*, 90 Cal.App.2d 734 [203 P.2d 537].) The burden of showing that taxes were assessed on the easement is upon the party contesting the prescriptive right, in this case the respondents. (*Redemeyer* v. *Carroll*, 21 Cal.App.2d 217 [68 P.2d 739].) There is no evidence in the present case that an easement was assessed. It is true, as appellants contend, that a prima facie case is established where there is open and uninterrupted use of the easement for the requisite period, without protest or interference. (*Wallace* v. *Whitmore*, 47 Cal.App.2d 369 [117 P.2d 926]; *Chapman* v. *Sky L'Onda Mut. Water Co.*, 69 Cal.App.2d 667 [159 P.2d 988].) However, in the present case the trial court found that M. S. Sullivan intended to construct the fence on the true boundary line and never intended to claim title to any land not in the deed description until the year 1948, that it was never the intention of William Sullivan and his predecessors in interest to claim title to the additional area enclosed by the fence prior to July 1948, unless it was the true boundary line.

Appellants have cited no case wherein an easement has been created for a division fence to be maintained on a line several inches inside the boundary of the adjoining property where there has been no agreement concerning a disputed boundary.

In *Chapman* v. *Sky L'Onda Mut. Water Co., supra*, cited by appellants, it was said that where occupancy was open and exclusive, the occupant exercising control of the property, and *where there was no direct evidence of the nature of the original entry,* the adverse nature of the claim should be presumed. Here Michael Sullivan testified as to the nature of his original entry, and that testimony supports the finding of fact referred to above. It is true that some testimony given by the same witness was conflicting as to his intent, but the trial judge has resolved that conflict.

Appellants Michael and Bridie Sullivan were not record owners of this property after they deeded it to their son, William, in 1946, but they have remained thereon as tenants, and the trial court found that they have remained there with the authority of William Sullivan to do all acts necessary, in the management of said property. Appellants have not directly attacked this finding as unsupported. It appears

from the record that such an inference is supported. Therefore, they may be considered parties actively involved in the maintenance of the fence.

█ Respondents' claim herein is not barred by laches since no injury has been shown to have resulted to appellants because of delay in asserting respondents' right. (*Los Angeles Brick & Clay Products Co.* v. *City of Los Angeles*, 60 Cal.App.2d 478 [141 P.2d 46]; *Downs* v. *Benatar's Cut Rate Drug Stores*, 75 Cal.App.2d 61 [170 P.2d 88].) █ Laches must be pleaded if it does not appear on the face of the complaint. (*Carlson* v. *Lindauer*, 119 Cal.App.2d 292 [259 P.2d 925]), and it has not been pleaded in this case. █ The lapse of a considerable period of years does not in itself constitute laches as a matter of law.

█ Finally, it is urged by appellants that damages should not have been awarded. Appellants say that the evidence conclusively establishes the fact that the fence did not cause any damage to respondents' property, and that this was admitted by respondents. However, the evidence clearly establishes that respondents were prevented by the fence from draining the water away from the side of their house, hence it accumulated and seeped through the basement causing visible damage therein, which because of the continuing refusal of appellants to move the fence, grew worse from year to year as they were unable to make necessary repairs. This testimony adequately supports the award of $500 damages to respondents.

Appellants devote several pages of their briefs to argument that the trial court could not award exemplary damages in such a case since there was no finding that appellants' conduct was wrongful. It seems clear, however, that no exemplary damages were awarded, and that the award of general damages is supported.

No prejudicial error appearing in the record before us, the judgment must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied July 18, 1956, and appellants' petition for a hearing by the Supreme Court was denied August 16, 1956.