Robert AULT and Lynda Ault, Appellants,

v.

STATE of Alaska, Appellee.

STATE of Alaska, Cross-Appellant,

v.

Robert AULT and Lynda Ault, Cross-Appellees.

Nos. 7820, 7889.

Supreme Court of Alaska.

Oct. 5, 1984.

Rehearing Granted and Opinion Amended Oct. 29, 1984.

---

William R. Satterberg, Jr., Fairbanks, for appellants and cross-appellees.

E. John Athens, Jr., Asst. Atty. Gen., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee and cross-appellant.

OPINION

Before BURKE, C.J., and RABINOW-
ITZ, MATTHEWS, COMPTON and
MOORE, JJ.

MATTHEWS, Justice.

This case concerns the right-of-way of
Ballaine Road in Fairbanks adjacent to
property owned by Robert and Lynda Ault,
appellants. The relevant facts are as fol-
lows.

In 1960 Bobby Masters made a home-
stead entry on what is now the Aults' land.
Masters deeded a road easement 200 feet
in width to the state on October 10, 1960.
In 1961 Masters relinquished his entry and
the land reverted to the federal govern-
ment. In 1962 the state recorded the deed
it had acquired from Masters. Shortly af-
ter Masters abandoned his entry, however,
the same parcel of land was entered by
John Stephens who obtained a patent on
May 9, 1964 which contained no reserva-
tions for road easements. Ballaine Road
was constructed by the state as an unpaved
pioneer access road, about forty feet wide,
no later than 1964.

The Aults purchased the land from Ste-
phens in 1968. The deed contained no road
easement reservation. The Aults built a
house and several cabins, and constructed
five different driveways from Ballaine
Road to various parts of their property.

In 1974 the state began a project to
improve Ballaine Road. William Cum-
mings, a state negotiator, told the Aults
that the state needed to acquire 1.91 acres
of right-of-way to accommodate realign-
ment of the road. Cummings asserted that
the state owned a 200 foot right-of-way.
The Aults disputed this assertion. Negoti-
ations continued and on March 1, 1974 the
Aults deeded to the state the following:

> All that part of the following described
> tract of land: NE ¼ of Section 13, T. 1
> N., R. 2 W., F.M. which lies within the
> right of way lines of Alaska Highway
> Project No. S–0646(3) delineated as to
> said tract of land on the plat attached
> hereto and made a part hereof as page 2
> and 3 of this instrument and designated

as: Parcel No. 5 said parcel containing
1.910 acres, more or less, *in addition to
existing highway....*

(Emphasis added). The price paid by the
state for this conveyance was $725.00.

The parties disagree over whether the
state agreed as a part of the consideration
for this conveyance to build a driveway at a
site specified by the Aults. The parties
also disagree as to whether the conveyance
was meant to convey the Aults' interest, if
any, in the full 200 foot right-of-way de-
scribed in Masters' deed.

In 1974 the state upgraded Ballaine Road
and placed a paved construction ramp at
the spot where the Aults claim they had
requested a driveway during the negotia-
tions. A bicycle path parallel to and below
the elevation of the roadway was construct-
ed in 1975, and paved in 1976. In 1981 the
Aults opened a business at the location
served by the paved ramp. Because the
grade between the business, bicycle path,
and Ballaine Road was steep, creating a
hazard for customers of the store, the
Aults raised the elevation of the ramp by
depositing about three feet of gravel on the
bicycle path.

On July 9, 1982 the state filed a com-
plaint seeking to require the Aults to re-
move the gravel or, alternatively, to pave
the newly elevated ramp at their own ex-
pense. The Aults answered and counter-
claimed, alleging among other things that
the state had no right-of-way for the bike
path and was liable to them in inverse
condemnation; that the construction and
design of the bike path substantially im-
paired their access to their property; and
that the state had breached its agreement
to build a driveway.

At a hearing on the state's motion for a
preliminary injunction, the parties agreed
that the state would pave the elevated
ramp and that each party would bear one-
half of the cost of this pending litigation.
The parties subsequently made cross mo-
tions for summary judgment which were
initially denied. However, the state's mo-
tion for reconsideration was granted. It

was based on arguments that (1) the Aults' deed conveyed the full 200 foot right-of-way to the state and (2) the bicycle path was not an unreasonable interference with the Aults' access rights. The Aults' counterclaims, except those pertaining to the alleged agreement that the state would build a driveway, were dismissed based on the court's ruling on the motion for reconsideration. A final judgment pursuant to Civil Rule 54(b) was entered from which the Aults have appealed. The state has cross-appealed from an award of attorney's fees of $350.00 in its favor.

## I.

The threshold question presented by the appeal is whether the state owns a 200 foot wide easement for Ballaine Road.

## A.

■ The state argues that it acquired a 200 foot wide easement for Ballaine Road from Masters, the first homestead entryman. Masters, however, relinquished his entry shortly after executing the deed to the state and never received a patent. Although a valid homestead entry creates an inceptive right in the homesteader which entitles him to title from the federal government, that right is contingent on the homesteader's perfection of his entry and compliance with the public land laws. *United States v. 348.52 Acres of Land,* 10 Alaska 351, 359 (D.Alaska 1943). An entryman who relinquishes his entry gives up all his interest in the land and therefore has no rights to convey to another. *United States v. New Orleans Pacific Railway Co.,* 235 F. 833, 840 (C.C.A.La.1916). Had Masters remained on the land and ultimately received a patent, the state would have held a valid easement. But since Masters relinquished his entry, his deed to the state conveyed nothing.

**1.** The description of the property conveyed by the deed is recited on page 953, *supra.*

**2.** AS 19.45.001 provides in part:
(8) "highway" includes a highway (whether included in primary or secondary systems),

## B.

■ The state next contends that the deed executed by the Aults was sufficient to clear any cloud on the state's title to the 200 foot wide easement.[1] The state's argument focuses on the phrase in the deed, "in addition to existing highway." The state notes that the plats attached to the deed and signed by the Aults showed the state's claimed 200 foot right-of-way and that the Alaska statutes define "highway" to include a highway right-of-way.[2] The state concludes therefore that the conveyance by the Aults to the state of "existing highway" included the 200 foot right-of-way.

The state supports this interpretation with the affidavit of its negotiator, William Cummings, which states:

Although the deed from Mr. Ault conveying the 1.92 acres *and* "the existing highway" was prepared by the State, Mr. Ault seemed sufficiently knowledgeable to understand the meaning of the deed he signed. He also was well aware of why the State desired such a clause in this case, conveying the existing highway, because he asserted that the State's existing title was not good.

The negotiator's notes, which are apparently notes recorded shortly after each negotiation session, state:

Mr. Ault is of the opinion that it is not a valid easement and that the State has no legal right to be on his property. Due to this consideration he is not particularly concerned about the fact that his home is in the existing right of way for the facility.... [Ault] pondered a moment and said that he would accept $900.00/acre if the Department would guaranty no culverts. In return he would also execute a valid easement for the existing right of way.

The Aults counter that a question of fact exists as to what they conveyed to the

road, street, trail, walk, bridge, tunnel, drainage structure and other similar or related structure or facility, and right-of-way thereof....

state. Robert Ault's affidavit, submitted in opposition to the motion for summary judgment, states that neither he nor his wife intended to convey the 200 foot right-of-way. He points out that the right-of-way purportedly conveyed would pass through their house, an improbable result for them to have intended. The Aults also argue that the price, $725.00, was probably inadequate for the 1.91 acres standing alone and would have been clearly insufficient for a conveyance of the entire 200 foot right-of-way as it crossed their land. Robert Ault's affidavit states:

> That, at no time whatsoever did I ever understand from my conversations with Mr. Cummings that I was also conveying to the State any right-of-way other than the 1.91 acres described in the Deed. Although Mr. Cummings at one time told me that he could make me move my house, he never pursued any such threat, other than to mention it once.

> The plat maps that the State offers as the deed signed by us were signed at the insistence of Mr. Cummings to show the location only of the 1.91 acres being bought. This is what Mr. Cummings told us when we signed the plats. Mr. Cummings did not tell us we were acknowledging the right-of-way, and, if he had done so, the documents would not have been signed, since $725.00 was much too low for 14–16 acres.

We agree with the Aults that a question concerning the meaning of the phrase "in addition to existing highway" is present. In construing ambiguous language in a deed, we apply the same principles as we use in interpreting the language of a contract. *See, e.g., Wessells v. State, Dept. of Highways,* 562 P.2d 1042 (Alaska 1977). Since resolution of this question appears to depend on the credibility of conflicting extrinsic evidence, it should be treated as a question of fact. *See* Restatement (Second) of Contracts § 212(2) (1981).

## C.

The state also contends that it has acquired the full 200 foot right-of-way by adverse possession and that the judgment may be affirmed on this basis.[3] The state's argument is that the deed from Masters to the state given in 1960 for the 200 foot right-of-way was "color of title" sufficient to bring into operation the seven year adverse possession period of AS 09.25.050.[4] The state notes that while Ballaine Road originally occupied only about forty feet of the 200 foot right-of-way claimed, one of the functions of the color of title doctrine is to give title to all of the land purportedly conveyed under the invalid deed, rather than just to the area actually physically occupied. Thus, the state concludes that it acquired title to a 200 foot right-of-way seven years after initial construction, in other words no later than sometime in 1971.

The state is correct in its argument that when one possesses land under color of title the boundaries of the land possessed are ordinarily measured by the terms of the colorable title rather than by the observable physical uses of the claimant. *See Lott v. Muldoon Road Baptist Church, Inc.,* 466 P.2d 815, 817–18 (Alaska 1970); *see also Alaska National Bank v. Linck,* 559 P.2d 1049, 1052 n. 8 (Alaska

---

**3.** A judgment may be affirmed on grounds not relied upon by the trial court. *Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961).

**4.** AS 09.25.050 provides:

The uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more is conclusively presumed to give title to the property except as against the state or the United States. In the absence of color of title the possessory period required for adverse possession is ten years. AS 09.10.030 provides:

No person may bring an action for the recovery of real property, or for the recovery of the possession of it unless commenced within 10 years. No action may be maintained for the recovery unless it appears that the plaintiff, an ancestor, a predecessor, or the grantor of the plaintiff was seized or possessed of the premises in question within 10 years before the commencement of the action.

1977). However, this doctrine does not apply where the owner is in actual possession of a part of the property. Under those circumstances the owner is said to constructively possess all of his property which is not in the adverse possessor's actual possession. 7 R. Powell, The Law of Real Property § 1013[2], at 91–43 to 44 (Rohan rev. ed. 1982). The Aults built five different driveways and the house in which they live on their property within the state's claimed right-of-way. Thus, until Ballaine Road was upgraded and widened in 1974, and the bike path was actually built in 1975, the state had no claim to any land outside the initial actual roadbed based on adverse possession.

■ The extent of the actual possession which the state has had since 1974, and 1975, is unclear on the record before us. Likewise the dates of the commencement of possession beyond the limits of the pioneer access road have not been established. Further, whether such possession has been interrupted by the act of the Aults in depositing gravel on the bicycle path in order to elevate their driveway, and if so the date of the interruption, are also factual matters unanswered in the record before us.

Moreover, a question of fact concerning the good faith of the state is presented. In *Lott v. Muldoon Road Baptist Church, Inc.*, 466 P.2d 815, 818 (Alaska 1970), we noted that while good faith was irrelevant under the ten year adverse possession statute, "the good faith of the claimant is a prerequisite to the establishment of his claim under color of title." We declined in *Lott*, however, to define what constitutes good faith in the context of a color of title claim. *Id.* (footnote omitted).

In some jurisdictions good faith for the purposes of establishing a claim under color of title seems to amount to no more than the absence of fraud or similar reprehensible conduct. *See Thurmond v. Espalin,*

50 N.M. 109, 171 P.2d 325, 329 (1946). Other jurisdictions have held that actual notice of a defect in the title will preclude the adverse possessor from claiming in good faith even where he is blameless. *See Fernandez & Brothers v. Ojeda,* 266 U.S. 144, 146–47, 45 S.Ct. 52, 52–53, 69 L.Ed. 209, 212 (1924); *Facundo v. Yabucoa Sugar Co.,* 118 F.2d 1, 4–5 (1st Cir.1941); *Madden v. Alpha Hardware & Supply Co.,* 128 Cal.App.2d 72, 274 P.2d 705, 707–08 (1954). Still others have held that the claimant must have had an honest belief based on reasonable grounds that he had valid title to the land when he entered it in order to establish a good faith claim. *See Fife v. Barnard,* 186 F.2d 655, 660 (10th Cir.1951); *Armstrong v. Cities Service Gas Co.,* 210 Kansas 298, 502 P.2d 672, 681 (1972); *Williams v. Striker,* 29 Wash.App. 132, 627 P.2d 590, 593 (1981); *see generally,* 2 C.J.S. *Adverse Possession* § 209 (1972).

■ There is an obvious tension between the state's ability to acquire land by adverse possession and the constitutional prohibition against the state's taking private property without just compensation.[5] Because of the prohibition, it is, in our view, appropriate to narrowly construe the circumstances under which the state may acquire property by adverse possession. In particular, as to state adverse possession claims under color of title, we believe that good faith should be defined as an honest and reasonable belief in the validity of the title. Whether these requirements are factually present in this case must be the subject of further proceedings in the superior court.

The state also argues that the Ault deed given in 1974 will suffice to establish color of title. Our comments pertaining to Masters' deed are also applicable to the Aults' deed and the same, or similar, factual issues are presented.[6]

---

**5.** The Fifth Amendment to the Constitution of the United States provides in relevant part: "... nor shall private property be taken for public use, without just compensation." Art. I, § 18 of the Alaska Constitution provides: "Private prop-

erty shall not be taken or damaged for public use without just compensation."

**6.** If on remand the court finds that the Aults' deed only conveyed the 1.91 acre parcel, another question would arise as to whether the de-

## II.

██ The Aults also argue that the design of the Ballaine Road bicycle path constitutes an unreasonable interference with their access to Ballaine Road. This argument is independent of the Aults' claim for damages in inverse condemnation. The trial court specifically found that the bicycle path did not amount to a substantial interference with the Aults' access rights. An insubstantial interference with access rights is not compensable. *B & G Meats, Inc. v. State*, 601 P.2d 252, 254 (Alaska 1979). The question whether a compensable claim for loss of access is presented is for the court, rather than the jury. *Triangle, Inc. v. State*, 632 P.2d 965, 968 (Alaska 1981). In *Triangle, id.* at 969, we held that the additional distance of one-half mile that potential customers of the property owner were made to travel in order to gain access to the property owner's business was not a compensable taking of access. In *B & G Meats*, 601 P.2d at 255, we held that a change in traffic pattern which meant that some traffic to the property owner's business was required to travel an additional 2.3 miles was not a compensable taking of access. The interference of access presented here is considerably less substantial than that which was presented in *Triangle* and *B & G Meats*, and it is our view that the court correctly decided that the interference was not a compensable taking.

For the reasons expressed herein, the judgment is AFFIRMED in part, REVERSED in part, and the case is REMANDED for further proceedings.[7]

scription in the deed is sufficient to constitute color of title.

7. In light of our disposition herein, the cross-appeal is moot.