[Civ. No. 9271.   Third Dist.   Jan. 10, 1958.]

FRANK B. WALLACE et al., Respondents, v. O. EUGENE WILLIAMS et al., Appellants.

*Assigned by Chairman of Judicial Council.

Hewitt & McBride for Appellants.

Gray & Hewitt, Arthur E. Hewitt and E. L. Gray for Respondents.

SCHOTTKY, J.—This is an appeal by defendants above named from a judgment reforming a deed by correcting the description therein and quieting the title of plaintiffs above named to the real property as described in the corrected description.

Bearing in mind the familiar rule that the prevailing party may rely upon any favorable evidence introduced at the trial and any reasonable inference to be derived therefrom in support of the judgment, we shall give a brief summary of the evidence as shown by the record. We shall refer to plaintiffs Wallace as respondents and defendants Williams as appellants.

In 1952, respondents negotiated with Jack E. McMahon as the agent of his wife, Bobbie McMahon, for the purchase of certain land in Sutter County and later that year received a deed from him as the administrator of her estate. Bobbie McMahon owned 2 acres of land from which there was excepted a 30-foot strip, being one-half of Franklin Road along the entire north side and an 80-foot strip being all of George Washington Boulevard along the entire east side leaving only

1.37 acres of usable land. The westerly portion of this land upon which the dwelling house in which the McMahons lived, a pressure system and other improvements were located was about a foot higher in elevation than the easterly portion which was unimproved. Before the Wallaces bought, McMahon pointed to the bottom of the roll marking the difference in elevation and told respondent Frank B. Wallace that the bottom of the roll would be his westerly boundary and the center of George Washington Boulevard would be his easterly boundary. Respondents agreed to purchase the property and McMahon measured from the bottom of the roll to the *center* of George Washington Boulevard a distance of 196.5 feet. However, as the court found in effect, by mutual mistake the deed conveying the property to plaintiffs conveyed the easterly 196.5 feet of the McMahon property which included all of George Washington Boulevard with the result that the easterly portion of the land conveyed by the metes and bounds description in the deed was 40 feet easterly of the line pointed out to plaintiffs by McMahon. It is this 40-foot strip that is in controversy. Respondents went into possession, put down a well, had a power line installed to run to the well, had a pressure system installed, planted a garden and cultivated right up to the drop-off. The well, pressure system, and building housing the same were all installed upon the disputed 40-foot strip.

Thereafter, McMahon, as administrator, sold the westerly portion of the 1.37 acres with the improvements thereon to the appellants. The deed described all of the McMahon property except the property described in the deed to the respondents. The appellants' deed therefore included the 40-foot strip.

Appellant Carmen E. Williams testified that the well and the building housing it, except for the roof, were on the property when appellants took possession.

Jack McMahon testified that he told the Williamses that their boundaries were from "the drop-off to the westerly side which drops off again." While it is true that his recollection of the precise date of pointing out the line was somewhat vague, Carmen Williams testified that he told them two or three weeks after they made their payment that the line was over the rolling ground but he didn't know just where. Since payment was made on February 10, 1954, and the order confirming sale was made on March 12, 1954, followed by the recording of appellants' deed on March 23, 1954, this would

place the conversation at a time before the sale was confirmed by the probate court.

Respondent Frank B. Wallace testified that the Williamses planted a hedge along the line he claims as his westerly line soon after they took possession and that prior thereto he had a conversation with Carmen Williams as follows:

"Mrs. Williams called me on the phone and wanted to know if it would be all right if they planted a hedge on the line. She said it would be partly on us and partly on her. And I said it'd be perfectly all right with me. I'd be very glad to have one planted there. And when I went out there the next time I found the hedge planted."

In this regard, Carmen Williams testified as follows in answer to questions asked by appellants' attorney:

"Q. . . . Now at any time after you went into possession did you have any conversation with Mr. Wallace about a boundary line? A. I called Mr. Wallace about a hedge. Putting a hedge in. And he said it was all right to put the hedge in. Q. And did you—what was your best recollection of what you said to Mr. Wallace about a hedge? A. Well, I don't recall just exactly what I did say. Q. Well, was there any reason for your calling Mr. Wallace about planting a hedge there on your own property? A. Yes, sir; on our previous home, we had a seven foot hedge, and the neighbor next door didn't like the hedge so she put a fence in and pushed our hedge over so we weren't taking any more chances. Q. I see. Now did you have any other discussions with Mr. Wallace about the boundary line or building a driveway or constructing anything on his property? A. We did about the driveway. I talked to Mrs. Wallace."

Respondent Frank B. Wallace further testified that soon thereafter he moved his trailer house upon the property and placed it on the disputed 40-foot strip about 5 feet from the hedge and placed a septic tank about 3 feet from the hedge.

Appellant O. Eugene Williams testified that in about June of 1955 he told Frank B. Wallace that he was short of ground some place as there wasn't the distance called for in his deed, and Wallace answered that the discrepancy must be on the other side of Williams' land and not on his (Wallace's) side.

Thereafter, respondents commenced the construction of a driveway and the foundation for a house partly upon the 40-foot strip. Early in April, 1956, appellants had the property surveyed and served respondents with notice to remove their personal belonging from the appellants' land. On the same

day, April 5, 1956, respondents filed their complaint herein for the reformation of the deed.

Appellants state that the questions involved upon this appeal are as follows:

"1. Are the appellants bona fide purchasers against whom reformation may not be had?

"a. Did appellants have *actual* notice of respondents' claim before appellants purchased their land?

"b. Did appellants have *constructive* notice of respondents' claim before appellants purchased their land?

"c. Did appellants pay a valuable consideration for the land purchased by them?"

Section 3399 of the Civil Code provides:

"When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

And in 22 California Jurisprudence, section 16, pages 728, 729, it is stated:

"A written instrument may be reformed against any person who is named therein as an adverse party, or his heirs, or successors in interest with notice. But an instrument should not be revised to the injury of third persons who have acquired rights 'in good faith and for value.' Hence a court may not reform a deed so as to take in land sold subsequent to its execution to a purchaser for value and without notice."

Appellants contend that they were bona fide purchasers for value without either actual or constructive notice of any claim of respondents to the 40-foot strip in controversy. However, we believe that the following analysis of the evidence in the memorandum opinion of the trial court is fully supported by the record:

"It is clear that when the plaintiffs purchased the land from the predecessors in interest of the defendants that the western boundary line was pointed out and definitely located by the seller. This boundary line is now defined by a hedge planted along it by the defendants. The controversy arises due to the belief of the grantor that the east boundary of the lot was in the center of the road, while in fact the land described takes the entire road and the east boundary is the east line of the road. This caused a mistake in the metes and bounds description, but it is quite clear that such mistake will

not deprive the plaintiffs of the land they actually bought which, as I have stated, extends to the line of the present hedge.

"The plaintiffs entered into possession of their land and constructed a well thereon. The preponderance of evidence shows that the defendants had such knowledge as to put them upon notice of the possession and claims of the plaintiffs and their conduct indicates that they took and accepted the land as extending to the present hedge line."

Section 19 of the Civil Code provides:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

▮ As stated in the case of *Three Sixty Five Club* v. *Shostak,* 104 Cal.App.2d 735, at page 738 [232 P.2d 546]:

"If the circumstances as to possession are such as to put a purchaser on inquiry, he is chargeable with knowledge of all that a reasonably diligent inquiry as to the rights and claims of the occupant might have disclosed. (25 Cal.Jur. 836.) The circumstances of each case determine whether an inquiry should be made. This is ordinarily a question of fact." (See also *Ocean Shore R. R. Co.* v. *Spring Valley Water Co.,* 218 Cal. 86 [21 P.2d 588].)

▮ We conclude that there is substantial evidence to support the court's finding as to a mistake in the description in the deed to respondents and also to support the court's finding that appellants were not bona fide purchasers without notice but, on the contrary, had notice of the possession of respondents and of their claim to all of the property lying east of the well defined line or roll.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.