[Civ. No. 6732. Fourth Dist. Aug. 20, 1962.]

HIGINO RAMIREZ et al., Plaintiffs and Appellants, v. DEWEY K. MOOKINI et al., Defendants and Appellants; RALPH B. NUNNELLEY, Defendant and Respondent.

Stickney, Ortlieb & Woodworth and Douglas Woodworth for Plaintiffs and Appellants.

W. E. Starke for Defendants and Appellants.

Ralph B. Nunnelley, in pro. per., for Defendant and Respondent.

GRIFFIN, P. J.—Plaintiffs, respondents and appellants, Higino Ramirez and wife (hereinafter referred to as plaintiffs), brought this action to quiet title to certain real property and for damages against defendants and appellants

Dewey K. Mookini and wife (hereinafter referred to as defendants Mookini). Damages are sought by plaintiffs against defendant and respondent Ralph B. Nunnelley (hereinafter referred to as defendant Nunnelley). The complaint alleges generally that plaintiffs now are and for a long time hitherto have been the owners and in possession of certain real property in San Diego County described as:

"That portion of Lot 22, Block 59, Linda Vista Unit No. 5, as shown on Map recorded as Map No. 3208, in the office of the Recorder of San Diego County . . . within the following described boundaries:

"Beginning at the most Easterly corner of said Lot; thence North 31 degrees 08 minutes 31 seconds East along the Easterly line of said lot a distance of 164.69 feet to the most Northerly corner of said Lot; thence South 44 degrees 11 minutes 43 seconds West 68.69 feet; thence South 22 degrees 04 minutes 55 seconds West 98.81 feet to the point of beginning."

They allege that defendants claim an interest therein adverse to plaintiffs. The second cause of action alleges that plaintiffs have an easement over the described real property for the purpose of maintaining thereon the overriding corner of a building, the main portion of which is situated upon lot No. 21 which adjoins it, for the purpose of providing reasonable access to and about said building; that said building existed for many years prior to the purchase of lot No. 22 by defendants Mookini and was acquired by them with full knowledge of the existence of said building and notice of an implied easement as alleged. The third cause of action was directed against defendant Nunnelley, alleging that he was employed by the Public Housing Administration of the United States to survey a true and correct line between said building situated on lot No. 21 and another building situated on lot No. 22 and to establish the boundary line between said lots, which line was to be approximately equidistant from said two buildings; that defendant Nunnelley so carelessly and negligently carried out said survey that the boundary line, as actually surveyed, and as indicated on recorded map No. 3208 of Linda Vista Unit No. 5, recorded on April 1, 1955, ran through a corner of plaintiffs' existing building, thereby creating an encroachment of said building upon said lot No. 22, and plaintiffs were damaged thereby to the extent of $10,000, including attorney's fees and expenses in connection with establishing a marketable title.

The prayer is that defendants Mookini be required to set forth the nature of their claims and to quiet title thereto; that in the event such relief is not obtained, plaintiffs be declared to be the owners of an easement over the said property as alleged.

During the trial, the court allowed plaintiffs to amend the complaint to conform to the proof, alleging, as a fourth cause of action that defendants Mookini acquired lot No. 22, block No. 59 in 1955; that it was intended to adjoin the land described in the complaint; that the southeasterly boundary of the Mookini land does now constitute the northwesterly boundary of said land as described in paragraph four of the complaint; that that property does now constitute an integral portion of the land purchased from the Dillons on November 28, 1956, by deed containing the description of lot No. 21, block No. 59, Linda Vista Unit No. 5, as per recorded map, and the northwesterly line of the land described in paragraph four of the first cause of action is in fact the northwesterly line of said lot No. 21; that the boundary line between the Mookini land and the Ramirez land was erroneously described in said deeds through a mistake of fact which was at all times known, or ought to have been known, to the defendants Mookini.

The named defendants answered and denied generally and specifically the allegations of the complaint. Defendant Nunnelley filed an additional answer claiming plaintiffs' action against him was barred by Code of Civil Procedure, section 338, subdivision 2.

### FACTS

The facts are not in great dispute. In 1954, defendant Nunnelley, pursuant to employment, or by contract, with the Public Housing Administration of the United States of America, laid out boundary lines for Linda Vista Unit No. 5, which were intended to separate the preexisting buildings into separate lots. On January 4, 1955, map No. 3208 of Linda Vista Unit No. 5 was recorded in San Diego County. On October 21, 1955, defendants Mookini purchased property in said subdivision, known as lot No. 22, block No. 59, and about the same time plaintiffs' predecessors in interest (the Dillons) purchased lot No. 21 adjoining it, by a similar description. On November 28, 1956, plaintiffs' predecessors in interest, the Dillons, sold lot No. 21 to plaintiffs. On February 11, 1960, the complaint was filed by plaintiffs and the case went to

trial before the court sitting without a jury on October 5, 1960.

Defendant Nunnelley conceded that, in making the survey, either he or one of his employees made an error in describing the boundary between lots No. 21 and No. 22, and as a result of his survey the boundary line went through the corner of the apartment house then located on lot No. 21, as thus described, and which was laid out according to recorded map No. 3208, Linda Vista Unit No. 5, and that there was an encroachment of Dillons' apartment house over onto defendants' lot No. 22 for a distance of about 12.40 feet.

Mr. Mookini testified at the trial that at the time he purchased his lot and house, he had no idea where the property line was as between lots No. 21 and No. 22. There is no showing that the Dillons knew where the line was when they sold the house to plaintiffs. Plaintiffs claimed that the Mookinis and the Dillons were good friends when they lived there and that there was some rumor through defendant Mookini's children that plaintiffs' house was over on defendants' property a few feet at a given point and that therefore it was defendant Mookini's duty to have notified plaintiff of this fact when they saw that plaintiffs were buying the property. It is also plaintiffs' testimony that the real estate broker for the Federal Housing Administration and Dillon pointed out some trees on the property of defendants Mookini about midway between the two homes, and indicated that they thought that was about the dividing line; that plaintiffs believed this until they employed a surveyor to survey it at a later date; that plaintiffs and Mrs. Mookini incidentally discussed the question prior to that and Mrs. Mookini suggested to plaintiffs that if they were not certain they should employ a surveyor to ascertain the fact, as they (defendants Mookini) were not interested. Mr. Mookini testified that when he bought his property he located "pegs" which he believed marked his property line, but due to the terrain (rear of lots are on a canyon), he could not see or tell whether or not the line went across the Ramirez building. Defendant Mookini then testified that he did build a split rail fence, about 4 feet in height, and about 1 to 1½ feet from the corner of plaintiffs' house, and lawn was planted on his portion; that he contemplated building a driveway half-way between his building and the plaintiffs' building. Mrs. Ramirez testified definitely that neither before nor after the close of escrow of the sale from the Dillons to plaintiffs was anything ever said by defendants

Mookini to the effect that plaintiffs' building might be over-lapping the boundary line, and that it was about one year after they purchased the property (1957) that they found out about the line and carried on negotiations with the Federal Housing Administration and defendant Nunnelley about it.

Defendant Nunnelley testified about his error and said that it was originally his intention to establish the dividing line between the two lots midway between the two structures. He drew a rough line on one exhibit so indicating. This testimony was admitted only against Nunnelley on the question of damages recoverable against him. The mistake was discovered about October 15, 1957.

On the witness stand, Mr. Mookini testified that by way of settlement, he was willing to concede to plaintiffs a 4-foot *easement* on his side of plaintiffs' building on their pie-shaped lots, provided plaintiffs put up a chain link fence. Counsel for defendants, at the outset of the trial, offered to give plaintiffs an easement in accordance with this testimony as long as the building there built would stand. Apparently, counsel for plaintiffs made some agreement to this effect and later changed his mind because defendants Mookini would not give plaintiffs the exclusive use of that 4-foot strip of land during the period in question.

The trial court then found generally that plaintiffs, since November 28, 1956, have been the owners of and in possession of that portion of lot No. 22, block No. 59, described in the complaint, which apparently includes a portion of the Mookinis' lot No. 22, which portion was marked and generally indicated by the trial court as beginning at the original survey stake on Tait Street and thence meandering on to lot No. 22 southerly to a point about 4 feet west of the corner of plaintiffs' apartment house, and thence southerly to the intersection with the original corner survey stake. It held that defendants Mookini had no interest in that portion taken from them. It found that this new southwesterly boundary of lot No. 22, as delineated by the trial court, did and does now constitute the northwesterly boundary of said lot No. 21, regardless of the former survey and recorded subdivision plan; that defendants Mookini knew, or ought to have known, for a reasonable time before the purchase of lot No. 21 by plaintiffs, of the error in the description of the boundary line, and accordingly defendants Mookini were under a duty to advise the plaintiffs of this error before title passed to them, and that plaintiffs

relied upon the silence of defendants. The court then found that defendant Nunnelley was *hired* by the Public Housing Authority and that plaintiffs did not rely on his survey; that the error in description was due to Nunnelley's negligence, but that it was not the *direct* or *proximate* cause of damages suffered by plaintiffs; that because of said error, plaintiffs incurred expenses incident to this, i.e., surveyor's fees, $75; attorney's fees in negotiations, $90, and attorney's fees and costs in the present action, $550, totaling $715; that plaintiffs' property has suffered no depreciation in value as the result of said error; that defendants Mookini suffered no damage by said encroachment and plaintiffs' cause of action arose within three years prior to the filing of the complaint but that defendant Nunnelley waived any right to assert the statute of limitations in the course of his correspondence with the plaintiffs. The court concluded that defendants Mookini were estopped from denying that the northwesterly line of the real property, as now described, was the true line. The judgment decreed that plaintiffs take nothing against defendant Nunnelley; that defendants Mookini have not had and do not now have any interest in the property taken from lot No. 22 by the court under the new boundary description.

The action was dismissed as to defendants United States Housing and Home Finance Agency and others.

Defendants Mookini appeal from the judgment and plaintiffs appeal from the judgment and particularly refer to the refusal of the court to allow judgment against defendant Nunnelley for claimed damages caused by his negligence.

The real basis upon which the trial court quieted plaintiffs' title to the strip of land here involved is not clear. The brief of defendants Mookini refers to the fact that a claim of adverse possession cannot be supported. There was no showing of adverse possession for the required statutory period or payment of taxes by claimant. (Code Civ. Proc., § 325; *Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702, 707 [336 P.2d 525].) No such claim can now be made.

It is fundamental that where a lot conveyed by deed is described by reference to a map, such map is made part of the deed. (*Danielson* v. *Sykes,* 157 Cal. 686, 690 [109 P. 87, 28 L.R.A. N.S. 1024] ; *Hoffman* v. *Van Duzee,* 19 Cal.App.2d 517, 519 [65 P.2d 1330].) In *Churchill Co.* v. *Beal,* 99 Cal. App. 482 [278 P. 894], it is held that this is true even though the survey is inaccurate. See also *Larson* v. *Larson,* 89 Cal. App.2d 846 [202 P.2d 121].

The right of the trial court to change the westerly dividing boundary line between lots No. 21 and No. 22, the recorded deeds to the respective parties, and the recorded plat of the subdivision, appears to be predicated upon the theory that the surveyor made an error in setting the stakes where he did, that the deeds and plat should be reformed, and that defendants Mookini knew or should have known where that line was; that it was the duty of defendants Mookini to inform plaintiffs of that fact and they failed to do so, and accordingly they are estopped to deny title to the property awarded to plaintiffs.

Plaintiffs cite and rely upon many cases which were direct actions to reform a deed in order to correct a surveyor's error, or where all parties participated in the common mistake, or where the parties had viewed the property and agreed on a tract, but the deed failed to describe the tract viewed, such as in *Belletich* v. *Belletich,* 40 Cal.App.2d 732 [105 P.2d 954]; *Martinelli* v. *Gabriel,* 103 Cal.App.2d 818 [230 P.2d 444]; *Pierce* v. *Freitas,* 131 Cal.App.2d 65 [280 P.2d 67]; *Renshaw* v. *Happy Valley Water Co.,* 114 Cal.App.2d 521 [250 P.2d 612]; *Good* v. *Lindstrom,* 80 Cal.App.2d 476 [181 P.2d 933]; *Wallace* v. *Williams,* 156 Cal.App.2d 646 [320 P.2d 211]; Civil Code, section 3399.

The original action here was not one to reform a deed and subdivision map. It was one to quiet title to a particular parcel of land which, from the deed and recorded subdivision map, definitely shows title in defendants Mookini, and there is no dispute of this fact. After the evidence was in, the court allowed an amendment to the complaint to conform to the proof, alleging generally the recorded deeds of the respective parties; that the boundary line between the two properties was erroneously described therein by a mistake and that the Mookinis were aware of the said error and were under a duty to tell plaintiffs of such error. Possibly this was sufficient to allege a claim for reformation of the deeds and plat. (*Mings* v. *Compton City School Dist.,* 129 Cal.App. 413 [18 P.2d 967].)

Mr. Mookini did testify that he bought lot No. 22 about October 1955; that no one ever pointed out the boundary stakes, but about one month later he found what he believed were his boundary stakes on his five-cornered lot; that there is a canyon or embankment at the rear of the two lots involved and that he could not see to the street from the rear marker; that he did not know where the line went with respect to the

building involved; that after the sale to plaintiffs, the Dillons remained in the house for several months and when the property changed hands to plaintiffs, plaintiffs came over and said something to him about the line; that he had never discussed the question of the line with the Dillons and knew nothing about it until plaintiffs employed a surveyor to come out and resurvey the dividing line.

Mrs. Ramirez stated that she never talked with defendants Mookini until after the escrow was closed; that the episode of the children telling her the porch was not on her property was about one year after she had bought the property, i.e. October 1957, and this was the first time that she heard of the encroachment; that about a month or two later she talked with Mr. Mookini about putting up a fence between the two properties and they agreed that plaintiffs would have a survey made, at plaintiffs' expense, to determine the line and then they would join in putting up a fence on it, but the survey showed the encroachment indicated and no fence was built.

Mr. Mookini did testify that about two months after he bought his property, a neighbor, who was a city-employed surveyor, told him, by eye location, that he believed the property line ran through the Ramirez building, but he paid no attention to it because no survey instruments were used. After the parties rested, the trial judge viewed the premises, returned and adopted the line as here indicated, which line he held constituted the dividing line between the two properties and quieted plaintiffs' title accordingly.

### SUFFICIENCY OF EVIDENCE

 Assuming the pleadings and findings were sufficient to support a judgment reforming the deeds according to the description indicated and quieting title in plaintiffs, the principal question is the sufficiency of the evidence to support the findings and judgment.

It is conceded that an error or mistake was made by the surveyor in designating on the plat the true line intended between the two properties. The surveyor testified that he intended establishing the line about midway between the two houses. The court did not reform the deeds according to the intended line so indicated, but reformed or established them from the original stake on Tait Street in a circuitous route about 4 or 5 feet distant from and around plaintiffs' building, returning to the original survey stake at the rear of the lot.

As to the mistake, the evidence, when considered in connection with the allowable inferences, might indicate that when

defendants Mookini purchased their lot and house they believed that the line ran somewhere between their house and plaintiffs' house. Some type of fence was built in that location. The evidence indicates that Mr. Dillon pointed out to plaintiffs where he believed the line was in that same locale. Mr. Mookini did have some belief that there was some error or mistake in that dividing line within about two months after he purchased his property and it is quite convincing that he continued in that belief until it was established as a fact after the subsequent survey. Assuming the pleadings were sufficient to support a finding for the reformation of the deeds, we feel that the evidence, if believed by the trial court, was sufficient to support a finding that the deeds should be reformed on the theory of mutual mistake and that plaintiffs were estopped from denying that the true boundary line runs somewhere between their structure and that of defendants Mookini. (*Belletich* v. *Belletich, supra,* 40 Cal.App.2d 732; *Pierce* v. *Freitas, supra,* 131 Cal.App.2d 65; *Good* v. *Lindstrom, supra,* 80 Cal.App.2d 476; Code Civ. Proc., § 1962, subd. 3; *Altman* v. *McCollum,* 107 Cal.App.2d Supp. 847, 862 [236 P.2d 914]; *People* v. *Ocean Shore R. R., Inc.,* 32 Cal.2d 406 [196 P.2d 570, 6 A.L.R.2d 1179].)

Since the trial court found the deeds should be reformed, the question then is presented whether the court erred in giving plaintiffs less property than they would be entitled to where the great weight of the evidence indicates the error or mistake was in drawing the line through plaintiffs' building rather than a straight line half-way between the Mookinis' building and plaintiffs' building. The court fixed a dividing line resulting in less land being awarded to plaintiffs. In justification of this award, plaintiffs, in their brief, argue that since this is an equitable action, defendants Mookini cannot now complain on appeal because plaintiffs were awarded a lesser amount than they were entitled to have awarded to them under the evidence. In *Dixon* v. *Eastown Realty Co.,* 105 Cal.App.2d 260 [233 P.2d 138], it was held that a party may not assert error in that part of a judgment which is in his favor.

The trial court recognized an available remedy where an injunction is denied and damages are awarded where the encroachment is slight and is created over an existing boundary line such as in *Christensen* v. *Tucker,* 114 Cal.App.2d 554 [250 P.2d 660]. Here, the building had been erected and the encroachment resulted from a subsequent erroneous sur-

vey of the property line. The remedy here sought was for reformation of the deeds and to quiet title.

We conclude that the trial court committed no prejudicial or reversible error in establishing the line indicated in the findings and that a just and equitable judgment resulted.

■ As to plaintiffs' appeal from the judgment refusing them damages as against defendant Nunnelley, a close question arises. The court found that Nunnelley was *hired* by the Public Housing Administration, the predecessor in ownership of both lots No. 21 and No. 22; that the error was due to Nunnelley's negligence but that it was not the direct or proximate cause of any damage sustained by plaintiffs with respect to said encroachment; that plaintiffs relied upon the silence of defendants Mookini and proceeded to purchase the property on the strength of such reliance; that because of said error and the confusion that followed, plaintiffs incurred expenses incident thereto in the sum of $715 (which included surveyor's fees, attorney's fees and costs) ; that plaintiffs' property suffered no depreciation in value as a result of said error and that defendants Mookini were not damaged by said encroachment.

Defendant Nunnelley, in his brief, argues that it was pursuant to a *contract* with the Public Housing Administration that he established the survey line and his contract with it was completed and accordingly any responsibility he had to the Public Housing Administration was a matter purely between them, and he was not liable to a third party. (Citing *Kolburn* v. *P. J. Walker Co.*, 38 Cal.App.2d 545, 549 [101 P.2d 747].)

The record is not clear as to the method by which Nunnelley was employed to perform the services for the Public Housing Administration. Nunnelley testified that he had a *contract* with it and he worked for it on that basis. The court found that he was *hired* by the Public Housing Administration. Some question arises as to whether the evidence supports this finding. It does not appear from this particular finding that the rule cited in the *Kolburn* case is necessarily applicable. Under the finding, the rule cited in *Lucas* v. *Hamm*, 56 Cal.2d 583, 584 [15 Cal.Rptr. 821, 364 P.2d 685], may have some bearing on the question, but it is not necessarily applicable. It was there held that under a contract for the benefit of a third person, performance is usually to be rendered directly to the beneficiary, but this is not necessarily the case, holding an

attorney liable to beneficiaries for negligently drafting a will under certain circumstances.

Without determining the sufficiency of the findings in this respect, the trial court, in considering the claimed damage to plaintiffs as against defendant Nunnelley, specifically found that the negligence of Nunnelley was not the proximate or direct cause of any damages to plaintiffs.

Apparently, plaintiffs also might well have been guilty of negligence in not ascertaining the true facts before purchasing the property or plaintiffs may have depended on the silence of defendants Mookini as being the proximate cause of their damage. It is also indicated that Nunnelley bore a major portion of the costs of preparing plaintiffs' case for trial, including the cost of a survey of plaintiffs' property subsequent to trial. Nunnelley was, to a large measure, responsible for effecting an amicable settlement of the dispute between the parties, which subsequently was rejected by the plaintiffs. It might have appeared to the trial court that plaintiffs were being awarded a considerable portion of the disputed area without any additional cost to plaintiffs and this was to be considered in connection with the damages claimed to have been suffered by plaintiffs. The finding that plaintiffs were not directly or proximately damaged by the claimed error or mistake of defendant Nunnelley has evidentiary support.

Judgment affirmed.

Shepard, J., concurred.